IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) |
| Applicant, | ) ) ) MISC. NO. _____ ) ) |
| NESTLE PREPARED FOODS, | ) ) ) |
| Respondent. | ) ) |

**Memorandum In Support Of
Application For Order To Show Cause Why An
Administrative Subpoena Should Not Be Enforced**

The Equal Employment Opportunity Commission (the "EEOC" or "Commission") is investigating a charge of discrimination filed by Charging Party Michael Peel ("Charging Party" or "Peel") against Nestle Prepared Foods ("Nestle") under the Americans with Disability Act of 1990, as amended ("ADA") and the Genetic Information Non-Discrimination Act of 2008 ("GINA"). Peel alleges that Nestle discriminated against him on the basis of his disability and genetic information and terminated him in retaliation for complaining about discrimination. The EEOC has issued a subpoena seeking documents and information from Nestle that are relevant to this investigation. Nestle has refused to provide the information requested, and that refusal has delayed and hampered the investigation.

The EEOC respectfully applies to this Court to order Nestle to comply with EEOC Subpoena No. IN-11-51S. First, the EEOC's subpoena was properly issued to further its investigation of a valid charge of discrimination. Second, the information sought is relevant because it relates to the EEOC's investigation of whether Nestle discriminated against Peel, and

against a potential class of applicants and employees in violation of GINA. Third, Nestle cannot show that the EEOC's requests are overly broad or unduly burdensome.

## I. FACTUAL BACKGROUND

On June 29, 2010, Peel filed a charge of discrimination alleging Nestle discriminated against him on the basis of disability and genetic information under the ADA and GINA by, *inter alia*, denying him a reasonable accommodation and terminating his employment from Nestle's Mount Sterling, KY facility in retaliation for complaining about discrimination. (Javey Declaration ("Javey Decl.") Ex. 1)

On June 8, 2010, Nestle required Peel to submit to a fitness for duty exam to determine his continuing ability to safely perform his duties as a food preparation technician. Nestle directed Peel to see Dr. Paul McLaughlin. As part of the exam, Dr. McLaughlin instructed Peel to complete several questionnaires, including one which collected information as to whether Peel's parents, siblings, or grandparents had a history of high blood pressure, diabetes, heart disease, thyroid disease or cancer. Peel noted several diseases as to his deceased maternal grandparents. Dr. McLaughlin cleared Peel to return to work without restriction the following day. On June 23, 2010, Peel was terminated for allegedly taking excessive breaks.

On October 8, 2010, Nestle submitted a position statement and supporting documentation to rebut the charge. (Javey Decl., Ex. 2) On October 20, 2010, the Commission asked Nestle to provide additional documents related to Mr. Peel's June 8, 2010 exam, including all completed medical questionnaires. (Javey Decl., Ex. 3) Nestle responded November 1, 2010, claiming Dr. McLaughlin was not a Nestle employee, that he did not have any contractual relationship with Nestle, and that all documents regarding Mr. Peel's exam within Nestle's custody or control were already produced. (Javey Decl., Ex. 4) Nestle forwarded the EEOC's request for the additional information to Dr. McLaughlin, along with a copy of a release Mr. Peel executed for

2

the EEOC. (Javey Decl., Ex. 5) Dr. McLaughlin produced Mr. Peel's complete medical file, including the family medical history questionnaire. (Javey Decl., Ex. 6)

In order to further investigate the alleged GINA violation and determine its scope and the existence of other victims of discrimination, on January 26, 2011, the Commission requested the following additional information as to the Mount Sterling, KY facility:

> 1. The identity of all company physicians, physicians under contract with the company or physicians to whom the company referred individuals for medical exams at any time from January 1, 2010 to the present;
>
> 2. The identity of each individual who submitted to a medical exam at any time from January 1, 2010 to the present, including name, date of application, date of hire, date of exam, name of physician who conducted the exam, if not hired, the reason(s) not hired, and if terminated, the reason(s) for termination; and
>
> 3. All medical questionnaires completed by individuals identified in item 2.

(Javey Decl., Ex. 7) Nestle responded February 16, 2011, claiming the request was beyond the scope of the charge, beyond the EEOC's enforcement and investigative authority and sought information not in Nestle's possession, custody, or control. (Javey Decl., Ex. 8) On June 13, 2011, Nestle reiterated its intent to not provide the requested information. (Javey Decl., Ex. 9)

On June 30, 2011, after several attempts to persuade Nestle to provide the information, the Commission voluntarily narrowed its request for additional information and via subpoena requested the following information as to the Mount Sterling, KY facility:

> 1. Documents that show the full name, address and telephone number of each physician to whom Nestle referred individuals for physical or medical examinations (i.e., fitness for duty exams, post-offer exams) from January 1, 2010 to the present; and
>
> 2. Documents that show the full name, date of application, if hired, date of hire, if not hired, reason(s) why, and if terminated, reason(s) for termination for each individual who submitted to a physical or medical examination (i.e., fitness for duty exam, post-offer exam) at Nestle's request from January 1, 2010 to the present, as well as the date of each exam and the name of the physician who conducted each exam.

(Javey Decl., Ex. 10) Nestle failed to produce the subpoenaed information. A Petition to

Revoke Subpoena was received by the Cincinnati Area Office Director on July 13, 2011. (Javey Decl., Ex. 11) On July 18, 2011, a Commission attorney explained the subpoena's relevance to Respondent's counsel and requested that Nestle withdraw its Petition to Revoke. (McFerren Decl., Ex. 1) On July 20, 2011, Respondent's counsel responded that Nestle would not withdraw its Petition to Revoke or produce the requested documents. (McFerren Decl., Ex. 2) On September 26, 2011, the EEOC denied Nestle's Petition to Revoke (Javey Decl., Ex. 12) On October 14, 2011, Respondent's counsel reiterated Nestle's objection to the subpoena. (McFerren Decl., Ex. 3) To date, Nestle has not complied with Subpoena No. IN-11-51S.

## II.     ARGUMENT

### A.     Nestle Has No Valid Defenses For Failing To Comply With the EEOC's Subpoena.

EEOC subpoena enforcement proceedings are summary in nature and involve only limited judicial review. EEOC v. United Air Lines, Inc., 287 F.3d 643, 649 (7th Cir. 2002); EEOC v. City of Norfolk Police Dep't, 45 F.3d 80, 82 (4th Cir. 1995); EEOC v. Kloster Cruise Ltd., 939 F.2d 920, 922 (11th Cir. 1991); EEOC v. Md. Cup Corp., 785 F.2d 471, 475 (4th Cir. 1986); EEOC v. Guess?, Inc., 176 F. Supp. 2d 416, 420 (E.D. Pa. 2001); see EEOC v. Peat, Marwick, Mitchell & Co., 775 F.2d 928 (8th Cir. 1985), cert. denied, 475 U.S. 1046 (1986) (holding that, on a motion to enforce a subpoena, the underlying merits of the case are not at issue); EEOC v. Dillon Cos., 310 F.3d 1271, 1277 (10th Cir. 2002) (not allowing "an employer to turn a summary subpoena-enforcement proceeding into a mini-trial by allowing it to interpose defenses that are more properly addressed at trial").

To successfully petition a court to enforce an administrative subpoena, the Commission need only show that (1) the subpoena is within the agency's authority; (2) the demand is not too indefinite; and 3) the information sought is relevant to the investigation. EEOC v. Shell Oil Co.,

466 U.S. 54, 72 n.26 (1984); United Air Lines, 287 F.3d at 649; EEOC v. A.E. Staley Mfg. Co., 711 F.2d 780, 788 (7th Cir. 1983); Univ. of Pa. v. EEOC, 493 U.S. 182, 191 (1990).  Once this showing has been made, a court will enforce the subpoena unless the Respondent can prove that the subpoena is unduly burdensome. EEOC v. Quad/Graphics, Inc., 63 F.3d 642, 645 (7th Cir. 1995); EEOC v. Citicorp Diners Club, 985 F.2d 1036, 1040 (10th Cir. 1993).

      B.      **The Subpoena Is Valid and Within The EEOC's Authority.**

Congress has authorized that the EEOC investigate charges of discrimination alleging that the ADA or GINA have been violated. Congress has conferred on the Commission broad powers of access to records of those entities against which charges have been filed, including the authority to subpoena evidence in an investigation.  42 U.S.C. § 2000e-8(a); 29 U.S.C. § 161 (incorporated into Title VII by 42 U.S.C. § 2000e-9).   GINA and the ADA incorporate the powers, remedies, and procedures (including subpoena powers) of Title VII.  42 U.S.C. § 2000e-8(a), 42 U.S.C. § 12117(a), 42 U.S.C.S. § 2000ff-6(a)(1).

Peel alleges that Nestle directed him to see Dr. Paul McLaughlin for a fitness for duty exam and that as part of the exam, Dr. McLaughlin instructed him to complete a family medical history questionnaire.  Information about the manifestation of a disease or disorder in a family member constitutes "genetic information" under GINA.  42 U.S.C.S. § 2000ff-4 (A) (iii).  No statutory exception permits employers, or doctors acting on their behalf, to request genetic information as part of a fitness for duty exam.[1]  An investigation regarding such conduct is within the agency's statutory authority. Thus, the first prong of the test has been satisfied.

---

[1] At this point in the investigation, it is reasonable for the Commission to conclude there was some type of arrangement, contractual or otherwise, between Nestle and Dr. McLaughlin whereby Dr. McLaughlin was acting as Nestle's physician when he examined Peel.  In Nestle's October 8, 2010 position statement, Dr. McLaughlin is identified as "the Company physician" and "the physician chosen by the Company."  Dr. McLaughlin is not Peel's personal physician,

5

### C. The EEOC Has Complied With All Procedural Prerequisites.

The EEOC has complied with all procedural prerequisites for enforcement of this subpoena, including (1) the filing of a valid charge; and (2) the issuance of an administrative subpoena that contains all required information.  See 29 C.F.R. § 1601.12 (elements of a valid charge); 29 C.F.R. § 1601.16 (elements of subpoena).[2]  Nestle can make no argument that Peel did not file a valid charge or that the subpoena lacks any of the elements required by the EEOC's federal regulations.

### D. The Information Sought is Relevant.

The information sought by the EEOC is relevant to the investigation of Peel's allegations that Nestle engaged in disability and/or genetic information discrimination.  Nestle maintains the EEOC's investigation is limited to June 2010, whether Mr. Peel was disabled and if so, whether Nestle based its termination decision on his alleged disability or some genetic information or protected activity.  However, the concept of relevancy during an EEOC investigation is broader than during litigation.

Title VII broadly grants the EEOC access to "any evidence of any person being investigated or proceeded against that relates to unlawful employment practices covered by this subchapter and is relevant to the charge under investigation." 42 U.S.C. § 2000e-8(a) (2011). "Since the enactment of Title VII, courts have generously construed the term 'relevant' and have

---

but rather was selected by Respondent to examine Peel.

[2]  29 C.F.R. § 1601.16(a) states, in relevant part:
> The subpoena shall state the name and address of its issuer, identify the person or evidence subpoenaed, the person to whom and the place, date, and the time at which it is returnable or the nature of the evidence to be examined or copied, and the date and time when access is requested. A subpoena shall be returnable to a duly authorized investigator or other representative of the Commission.

afforded the Commission access to virtually any material that might cast light on the allegations against the employer." Shell Oil Co., 466 U.S. at 68-69; accord EEOC v. Technocrest Systems, Inc., 448 F.3d 1035, 1040 (8th Cir. 2006); Dillon Cos., 310 F.3d at 1274.  The relevancy limitation does not force the EEOC only to review evidence concerning the specific charge; evidence concerning practices other than those specifically charged may also be sought.  EEOC v. Roadway Express, Inc., 750 F.2d 40 (6th Cir. 1984); EEOC v. Tempel Steel Co., 814 F.2d 482 (7th Cir. 1987); EEOC v. Cambridge Tile Mfg. Co., 590 F.2d 205 (6th Cir. 1979).

  The information requested is relevant in that it will allow the Commission to thoroughly investigate Nestle's medical exam process and look for other victims of discrimination.   In particular, Nestle required Peel to submit to a medical exam for the purpose of determining his continuing fitness for duty.  Peel was sent to Dr. McLaughlin and the exam included completion of a family medical history questionnaire.  GINA prohibits employers from requesting, requiring, or purchasing genetic information unless one of six statutory exceptions applies. 42 U.S.C.S. § 2000ff-1 (b) (1) – (6) (2011).  No exception permits employers, or doctors acting on their behalf, to request genetic information as part of a fitness for duty exam.

  The EEOC's expansion of this investigation to look for other victims (whether current or former employees or applicants) is reasonable in light of the circumstances.  The requested information will allow the EEOC to determine if Dr. McLaughlin collected genetic information from other employees and/or applicants, whether Nestle utilized other doctors who engaged in the same conduct, and if other GINA acquisition violations occurred, whether they resulted in any GINA use violations.  It is a well-recognized principle that the EEOC acts on behalf of the public, and not merely on behalf of the narrow interests of a charging party.[3]  The Sixth Circuit

---

[3] Permitting the Commission to search out discrimination fully when information comes to light

has held that, "Title VII of the Civil Rights Act of 1964 should not be construed narrowly, and the Commission may, in the public interest, provide relief which goes beyond the limited interests of the charging parties." Blue Bell Boots, Inc. v. EEOC, 418 F.2d 355, 358 (6th Cir. 1969). Roadway Express, Inc., 261 F.3d at 638 ("...this Court's Blue Bell decision specifically held that evidence that an employer discriminated in one situation or employment position is relevant to a determination of whether the employer discriminated in other circumstances.)

### E. Compliance With the Subpoena Does Not Impose an Undue Burden On Nestle's Operations.

Unless the cost of compliance with a subpoena is "unduly burdensome in light of the company's normal operating costs," the district court should enforce the subpoena. Md. Cup Corp., 785 F.2d at 479. A court will not excuse compliance with a subpoena for relevant information on the grounds of burdensomeness unless Nestle establishes that "compliance threatens to unduly disrupt or seriously hinder normal operations of [its] business." Id.; A.E. Staley Mfg. Co., 711 F.2d at 788; EEOC v. Bay Shipbuilding Corp., 668 F.2d 304, 313 (7th Cir. 1981). Nestle carries a "difficult burden" in this regard. United Air Lines, Inc., 287 F.3d at 653.

Nestle objects to the subpoena because it was issued against the company's Mount Sterling, Kentucky facility and requires the production of documents in Cincinnati and without reimbursement for travel expenses. However, the facility is within 100 miles of the EEOC's Cincinnati office, the requested documents are not voluminous, and Nestle can produce them in hard copy or electronic form via postal or electronic mail. Any objection that the EEOC's

---

that suggests a broader swath of discriminatory conduct not only makes sense but is consistent with the Commission's statutory purpose of eradicating discrimination from the nation's workplaces. See General Telephone v. EEOC, 446 U.S. 318 (1980). Expanding investigations when appropriate to facilitate a systemic investigation is one the EEOC's core investigatory tools, and is critically important to the Commission's systemic enforcement program. See EEOC Systemic Task Force Report available at http://www.eeoc.gov/eeoc/task_reports/systemic.cfm.

subpoena request is "unduly burdensome" is without merit.

### III.   CONCLUSION

For the foregoing reasons, the Court should enforce the EEOC's subpoena. The subpoena seeks information relevant to a valid charge of discrimination that is within the EEOC's enforcement authority and the Respondent has not established that complying with it would be unduly burdensome.  The Commission therefore urges the Court to issue the accompanying proposed Order to Show Cause and enforce the subpoena.

Respectfully submitted,
LAURIE A. YOUNG, #11480-49
Regional Attorney

MICHELLE EISELE, #12070-49
Supervisory Trial Attorney

EQUAL EMPLOYMENT OPPORTUNITY
  COMMISSION
Indianapolis District Office
101 W. Ohio St., Suite 1900
Indianapolis, IN 46204-4203

s/Aimee L. McFerren
Aimee L. McFerren
Kentucky Bar No.: 89912
Federal I.D. No.: 36953
EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
600 Dr. Martin Luther King, Jr. Place
Suite 268
Louisville, KY 40202
502-582-6308
502-582-5435 (fax)
aimee.mcferren@eeoc.gov

## **CERTIFICATE OF SERVICE**

      I hereby certify that on November 3, 2011, a copy of the foregoing document was filed electronically and a true and correct copy was sent via electronic mail and regular U.S. mail to the following:

Stephanie Lewis
Jackson Lewis LLC
One Liberty Square
55 Beattie Place, Suite 800
Greenville, SC 29601
LewisS@jacksonlewis.com

Counsel for Respondent

                                        s/ Aimee L.McFerren__
                                        Aimee L. McFerren