IN THE UNITED STATE DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

EQUAL EMPLOYMENT OPPORTUNITY       )
COMMISSION,                        )
                                   )
            Applicant,             )
                                   )
vs.                                )        C.A. NO.: 5:11-cv-00358-JMH-REW
                                   )
NESTLÉ PREPARED FOODS              )
COMPANY,                           )
                                   )
            Respondent.            )
_____

## RESPONSE IN OPPOSITION TO APPLICATION FOR ORDER TO SHOW CAUSE

Pursuant to the Court's Order to Show Cause dated November 8, 2011, Respondent Nestlé Prepared Foods Company (hereinafter "Nestlé" or "the Company") respectfully submits this Response in Opposition to the Application For Order To Show Cause Why An Administrative Subpoena Should Not Be Enforced.  (Dkt. 1 and 2.)

As discussed more fully below, this matter involves a narrow issue of law about the scope of the Equal Employment Opportunity Commission's ("EEOC") investigatory authority under the Genetic Information Non-Discrimination Act ("GINA"). The EEOC's Subpoena No. IN-11-51S ("Subpoena") is premised on the incorrect legal assumption that employers violate GINA when private physicians who are not in any contractual relationship with the employer inquire about the family medical history of a patient referred by the employer, even when it is undisputed (as here) that the employer did not request, receive, or use the information about family medical history. Such a legal assertion finds no support in the applicable law and would create numerous legal, practical, and medical concerns. Moreover, the EEOC is attempting to

expand the investigation where the individual charge of discrimination contains no articulation of any substantive GINA violation and where the EEOC's stated basis for the Subpoena throughout the investigation was predicated exclusively on a procedural regulation which was not even in effect at the time of the events giving rise to the charge of discrimination. The EEOC simply has no authority to expand their investigation in this matter, and to allow them to do so would raise grave due process concerns, result in an expensive and needless use of resources by the parties and the Court, and impact the confidentiality and privacy concerns of other individuals who are not subject to any charge under investigation. Notably, the district court in *EEOC v. Loyola Univ. Med. Ctr.*, 2011 U.S. Dist. LEXIS 118286 (N.D. Ill. Oct. 13, 2011), recently denied the EEOC's application to enforce a subpoena in similar circumstances. A copy of this decision is attached as Exhibit A. Because the information sought by the Subpoena is not within the agency's authority and is not relevant to any lawful investigation, the EEOC's Application for Enforcement of the Subpoena should be denied.

## I.   BACKGROUND

The following pertinent facts related to the EEOC's pre-Subpoena investigation are undisputed. On June 29, 2010, Michael Peel ("Mr. Peel"), a former Nestlé employee, filed a charge of discrimination. Mr. Peel's claims relate to a fitness for duty evaluation he was given by a private physician,[1] Dr. Paul McLaughlin, on June 8, 2010. In the charge of discrimination,

---

[1] The EEOC states in a footnote in its Application that it "is reasonable for the Commission to conclude that there was some type of arrangement, contractual or otherwise, between Nestlé and Dr. McLaughlin." (App. at 5 n. 1.) This statement does not have any good faith factual basis. Nestlé has repeatedly made clear to the Commission in writing that this is incorrect and provided documentation establishing that Dr. McLaughlin is a private physician in a medical practice at the Mount Sterling Medical Center. There is no contractual relationship between Nestlé and Dr. McLaughlin. To the extent that there was some initial misunderstanding by the EEOC about the relationship between Nestlé and Dr. McLaughlin, this misunderstanding should have resolved by Nestlé's correspondence dated November 1, 2010, November 3, 2010, December 2, 2010, December 15, 2010, February 16, 2011, and June 13, 2011. The Commission is also in receipt of Dr. McLaughlin's medical records, which clearly show that he is a private physician to whom Nestlé referred Mr. Peel for a lawful medical examination. Nestlé does not have access to, or control over, how he practices medicine or over his private patient files. The fact that Nestlé refers employees

2

boxes are checked for GINA and the ADA, but there is no articulation of any substantive GINA violation in the charge. [2]  The charge of discrimination is attached as Exhibit B.  The Company submitted a position statement on October 8, 2010.[3]

On October 20, 2010, twelve days after Nestlé submitted its position statement, the EEOC investigator assigned to the charge, Thomas Feiertag, sent Nestlé a request for supplemental information, requesting the complete file of the private physician who conducted the fitness for duty evaluation.  (Exhibit C.) Nestlé responded by written correspondence to Mr. Feirertag and explained that it had provided the EEOC with all the information in its possession, custody, and control regarding Mr. Peel's employment and fitness for duty evaluation, that the private physician was not a Nestlé employee and was not in any contractual relationship with Nestlé, and that Nestlé did not have access to the physician's records.   (Exhibit D.) Nevertheless, the EEOC continued to request the private physician's medical file without explaining the basis for the request, and Nestlé cooperated. The EEOC obtained the private physician's medical file on December 2, 2010.  The private physician's file on Mr. Peel again showed that the private physician did not provide any genetic information to Nestlé and that Mr. Peel does not suffer from any disability.

On January 26, 2011, the EEOC sent another request for additional information requesting the identity of "all company physicians, physicians under contract with the company

---

to a private physician does not make the physician "Nestlé's physician" or an employee of Nestlé. Thus, there is no non-frivolous basis for any continued incorrect statements to the Court regarding Dr. McLaughlin's status as anything other than a private health care provider.

[2] The Subpoena purports to seek information under GINA, the ADA, and Title VII.  Mr. Peel, however, did not allege any violation of Title VII. Moreover, the EEOC makes clear in its Application that the Subpoena is premised only on its investigation regarding GINA, and not the ADA. (Application at 3 (noting material at issue was requested to "further investigate the alleged GINA violation and determine its scope and the existence of other victims").)

[3] Nestlé has not attached the position statement and accompanying exhibits in an effort to avoid dissemination of confidential information but will be glad to submit this information to the Court upon request.

or physicians to whom the company referred employees for medical examinations" from January 1, 2010 to present, as well as information regarding "each employee" who was administered a medical examination, "copies of all medical questionnaires" for each person, and "records related to termination" for each employee terminated since January 2010. (Exhibit E.) Undersigned counsel promptly spoke to the EEOC investigator (Mr. Feiretag) and inquired about the basis for this request.  (Declaration of Stephanie E. Lewis, attached as Exhibit F.)  Mr. Feiretag said that the request was based on the private medical practice's standard intake questionnaire in the physician file provided to the EEOC, which Nestlé never had in its possession at the time of Mr. Peel's employment.  (Exhibit F at ¶ 2.)  Specifically, Mr. Feiretag pointed to the section in the intake form which requested family medical history.  (*Id.* at ¶ 2.) There is no dispute that the physician did not provide the intake questionnaire to Nestlé.

Other than pointing to this standard intake questionnaire, Mr. Feiretag did not articulate any basis for the requested information.  (*Id.* at ¶ 3.) He did not suggest that he viewed the charge of discrimination as having any merit.  (*Id.* at ¶ 3)  By written correspondence dated February 16, 2011, Nestlé objected to this request for additional information as beyond the scope of the charge, beyond the scope of the agency's enforcement and investigative authority, and as seeking information that is not in Nestlé's possession, custody, or control.   (Exhibit G.)   Nestlé specifically asked the EEOC to share its authority or basis for proceeding as proposed in its January 26 request for information.  Nestlé did not receive any written response to its February 16 correspondence.

Four months later, Mr. Feiertag contacted undersigned counsel by telephone on June 9, 2011 and indicated that although he was not inclined to pursue the matter further, he had received instructions from an unidentified individual to pursue the information as requested in

4

the EEOC's January 26 correspondence.  (Exhibit F at ¶ 4.)  When asked again on what basis the information was being requested, Mr. Fierertag indicated that the EEOC was basing its request for supplemental information on § 1635.8(d) in the final GINA regulations.  (Exhibit F at ¶ 5.)  Section 1635.8(d) states that employers must affirmatively notify healthcare providers not to collect family medical history during an employment-related medical examination. Undersigned counsel for Nestlé immediately explained to Mr. Fierertag that it would be improper for the EEOC to rely on § 1635.8(d) because that regulation was not in effect at the time of the events giving rise to Mr. Peel's charge of discrimination.  (Exhibit F at ¶ 6.)  Mr. Feieretag indicated that he agreed that it would be unfair to base its enforcement actions on a regulation that was not in effect at the time.  (Exhibit F at ¶ 7.)  Nestlé followed up with written correspondence dated June 13, 2011 reiterating that the provision that the EEOC indicated it was relying upon for its expanded request for information was not in effect at the time of the events giving rise to the charge. (Exhibit H.)   Specifically, § 1635.8(d) was issued in November 2010 and became effective January 2011, over 6 months after the events giving rise to Mr. Peel's charge.  The proposed GINA regulations which were in effect in June 2010 specifically state that it was within an employer's discretion to elect whether to notify healthcare providers not to provide genetic information to the employer.  (*See* Proposed Regs. at 9062, attached as Exhibit I.)  Nestlé further emphasized again that there is no dispute here that Nestlé never acquired or used genetic information, which is the extent of the statutory prohibition under GINA.  (Exhibit H.)  The EEOC again never responded to Nestlé's arguments or explained any legitimate statutory or regulatory basis for proceeding with its request.

Mr. Feieretag subsequently contacted undersigned counsel by telephone and stated that he had no response to Nestlé's position and that the EEOC simply "wanted" the information and

would subpoena it if not provided voluntarily.  (Exhibit F at ¶ 8.)  Undersigned counsel again asked for some explanation as to the basis for the EEOC's position, and Mr. Feiretag indicated that he was not given a response to Nestlé's argument but simply instructed to get the information.  (*Id.* at ¶ 9.)

On July 5, 2011, Nestlé received the instant Subpoena requesting:

1.      Documents that show the full name, address and telephone number of each physician to whom Nestlé referred individuals for physical or medical examinations for positions a the Mt. Sterling facility from January 1, 2010 to present.

2.      Documents that show the full name, date of application, if hired, date of hire, if not hired, reason(s) why, and if terminated, reason(s) for termination for each individual who submitted to a physical or medical examination at Nestlé's request for positions at the Mt. Sterling facility from January 1, 2010 to the present.

On July 12, 2011, Nestlé filed a Petition to Revoke Subpoena.  (Exhibit J.)  On July 18, 2011, the EEOC Trial Attorney sent a letter requesting that Nestlé "withdraw" the Petition to Revoke.  A copy of this correspondence is attached as Exhibit K. Notably, the EEOC stated in this correspondence that the private physician "is the employer" for purposes of GINA. (Exhibit K.) Nestlé responded to this correspondence on July 20, 2011 and respectfully declined to withdraw the Petition to Revoke, noting that there was no legal authority for the proposition that the private physician "is the employer" under GINA and further noting that such a proposition is directly contrary to the text of GINA and its regulations. A copy of this correspondence is attached as Exhibit L.

On September 26, 2011, the EEOC issued a Determination denying the Petition to Revoke.  (Exhibit M.) Importantly, the EEOC agreed in its Determination that the family

medical history taken by Dr. McLaughlin "was not shared with Nestlé." (Exhibit M at 2 (emphasis added).)  However, the EEOC's Determination states that "[a]ny argument that no violation exists because Nestlé does not have a contractual relationship with Dr. McLaughlin or that he did not pass along the genetic information must fail." (Exhibit M at 4.) The EEOC states that it has "long been the Commission's position under the ADA that a doctor who works for than employer, or who conducts an exam at an employer's request, is the employer." (Exhibit M at 4 (emphasis added).)

Given that the EEOC concedes that Nestlé never received any family medical history, it defies logic to suggest that Nestlé somehow "discriminated" against Mr. Peel on the basis of this information. Moreover, the suggestion that Mr. Peel was "discriminated" against on the basis of genetic information is nowhere contained in his charge of discrimination.  (Exhibit B.) Nevertheless, the EEOC states repeatedly in its Determination that the Subpoena is necessary to "thoroughly investigate Nestlé's medical exam process and look for other victims of discrimination." (Exhibit M at 7.)

In its Determination, the EEOC also disavowed its intent to rely on the notice provision of § 1635.8(d) in support of the Subpoena. (Exhibit M at 7.) The EEOC expressly states that "the Commission is not relying on § 1635.8(d) for purposes of this Determination." (Exhibit M at 7.)

Because the Commission's stated rationale for the Subpoena shifted, Nestlé responded to the Determination by written correspondence dated October 14, 2011, noting that Nestlé continued to object to the Subpoena and the additional grounds thereof. A copy of this correspondence is attached as Exhibit N.  In addition to its previously set forth objections, Nestlé noted that it objected to the EEOC's reliance in the Determination on statutory provisions in the ADA and case law under the ADA for the conclusion that a private physician's request for

family medical history (without more) subjects the employer to liability under Title II of GINA. Nestlé specifically noted that the ADA provision relied upon by the EEOC in its Determination is nowhere contained in Title II[4] of GINA, the statutory and regulatory provisions of GINA are directly inconsistent with the ADA provision cited, and there is otherwise no legal support for the EEOC's position.

The EEOC did not respond to this correspondence and has not otherwise provided at any time any legal authority under GINA for the position taken here in attempting to enforce this Subpoena. Indeed, in the Application and supporting Memorandum, the EEOC does not cite <u>any</u> authority for the proposition that the Subpoena is a valid exercise of the agency's authority or relevant in light of the investigation conducted to date. Instead, the EEOC glosses over the procedural and factual background and appears to rely indirectly on the assumption that the private physician "is the employer" for purposes of GINA, without citation to any authority in support of that assumption. (*See* Memorandum in Support of Application at 5, 7.)

## II.    <u>ARGUMENT AND AUTHORITIES</u>

To successfully petition this Court to enforce the Subpoena, the EEOC must establish that (1) the subpoena is within the EEOC's authority, (2) the demand for information is not too indefinite, and (3) the material requested is relevant to the charge being investigated. *Univ. of Pa. v. EEOC*, 493 U.S. 182, 191 (U.S. 1990). In determining whether an administrative subpoena is enforceable, a district court should not act as a rubber stamp because that would defeat Congress' purpose for establishing judicial review. *See EEOC v. Ford Motor Credit Co.*, 26 F.3d 44, 45 (6th Cir. 1994) ("If Congress had meant for the EEOC's determination . . . simply to be accepted by the Courts it would not have provided for judicial review of these data

---

[4] Title II prohibits employment discrimination on the basis of genetic information and is the only Title of GINA even arguably at issue here.

requests."). Furthermore, while this type of proceeding is generally not the proper time to litigate the merits of a claim, a district court should examine the substance of the EEOC's underlying claim if the opposing party can show that there is no factual or legal support for the EEOC's determination to investigate. *EEOC v. Roadway Express, Inc.*, 750 F.2d 40, 42 (6th Cir. 1984).

**A.      The Subpoena is Not Within the Scope of Any Lawful Investigatory Authority Because it is Premised on an Unfounded Legal Assumption.**

The EEOC has asserted that its purported authority to issue the Subpoena is because a private physician "is the employer" for purposes of GINA when it performs a medical examination at an employer's request. (Exhibits K, M.) Although the EEOC does not directly state the purported basis for the Subpoena in this enforcement action, it appears to be premised on this assumption. (*See* Memorandum in Support of Application at 5, 7.) There is no legal basis for this contention, and the contention is directly inconsistent with the text and interpreting regulations of GINA.

First, nothing in the text of Title II of GINA extends the EEOC's authority to investigate or regulate the practices of private health care providers. GINA prohibits the following specific practices: (1) "discrimination" by an employer against employees or applicants because of genetic information; (2) "use" by an employer of genetic information in making employment decisions; and (3) "acquisition" or disclosure by an employer or covered entity of genetic information. 42 U.S.C. § 2000ff-1(a); 29 C.F.R. §§ 1635.4, 1635.8(a). Here, the EEOC concedes that Nestlé never discriminated, requested, acquired, or used genetic information. (Exhibit M at 2.) Nor is there any regulation or statutory definition that would make a private physician an "employer" within the meaning of the Act simply because he was referred to conduct an examination. GINA's text and regulations specifically define the term "employer" in

42 U.S.C. § 20000ff(2)(B) and 29 C.F.R. §§ 1635.2 & 1635.3 of the EEOC's regulations, and that definition does not include healthcare providers. In fact, several of the GINA regulations expressly delineate between information sought or acquired by health care providers and information sought or acquired by employers. *See, e.g.*, 29 C.F.R. §§ 1635.8(b), 1635.8(d), § 1635.11(d).   These distinctions would be unnecessary if the healthcare provider were "the employer." For example, the final GINA regulations which became effective in January 2011 state that if an employer acquires genetic information from a healthcare provider, that acquisition will not create liability under GINA "if the employer directs the individual and/or health care provider from whom it requested medical information (in writing, or verbally, where the covered entity does not typically make requests for medical information in writing) not to provide genetic information." 29 C.F.R. §§ 1635.8(b)(1)(i)(A), 1635.8(b)(1)(i)(B).

These regulations cannot be squared with the EEOC's contention here that the physician "is the employer." In fact, the EEOC's position here would require a conclusion that any request for family medical history by a physician would automatically result in liability for the employer, irrespective of any notices provided by the employer to the physician. Taking the EEOC's argument to its logical conclusion, even if the employer provided all the notices required or suggested by the EEOC to physicians to whom they referred employees for lawful examination and instructed each physician not to request family medical history, the employer would still be liable if the physician nevertheless requested it (and did not disclose it to the employer) because under the EEOC's theory, the physician "is the employer."  Such a position is logically unsound and does not comport with the plain text of GINA or its regulations.

Furthermore, any attempt to rely on provisions of the ADA in support of the EEOC's statutory authority to enforce the Subpoena should be rejected.[5] The EEOC has previously cited 42 U.S.C. § 12112(b)(2) of the ADA and case law interpreting that provision to support its contention that the private physician "is the employer."  (Exhibit M at p. 5.)  That provision has no application here because of the difference in the scope of the ADA and GINA.  The text of 42 U.S.C. § 12112(b)(2) of the ADA states that the term "discriminate against a qualified individual on the basis of disability" includes:

> participating in a contractual or other arrangement or relationship that has the effect of subjecting a covered entity's qualified applicant or employee with a disability to the discrimination prohibited by this subchapter (such relationship includes a relationship with an employment or referral agency, labor union, an organization providing fringe benefits to an employee of the covered entity, or an organization providing training and apprenticeship programs).

As a threshold matter, there is no provision in GINA similar to this ADA provision. If Congress wanted a provision like this to apply to GINA, it could have included such a provision.  Second, this provision lists several covered entity-third party relationships that could subject a covered entity to liability, but does not include a relationship with a doctor or health care provider in the list.  Third, this provision augments the ADA's definition of "discriminate."   What the EEOC is attempting to do here, however, is incorporate this *ADA* provision prohibiting *discrimination* into *GINA's* provision prohibiting *acquiring* genetic information.  Such an attempt is inappropriate and finds no support in the text of GINA.

At bottom, the EEOC's underlying assumption that the physician "is the employer" simply cannot be reconciled with any existing law or good faith extension thereof. There are also

---

[5] The EEOC has made clear that the information sought under the subpoena is solely to investigate an alleged violation of GINA. (*See, e.g.*, Ex. M and Mem. In Supp. Application at 5, 7.)   There is no suggestion that the Subpoena is sought to investigate any alleged violation of the ADA.

many practical and medical concerns with adopting the logic that the EEOC espouses here in support of its authority. For obvious reasons, private physicians may desire, in their sound medical judgment, to inquire about family medical history of patients who they treat. The American Medical Association expressly endorses the collection of family medical history by physicians, noting that "gathering a complete and accurate family medical history is becoming more important as genetic medicine explains more diseases." http://www.ama-assn.org/ama/pub/physician-resources/medical-science/genetics-molecular-medicine/family-history.page, last visited on December 1, 2011. Where that information is not requested by or shared with the employer, the EEOC has no statutory authority to regulate this practice of private healthcare providers. The EEOC's investigation here is thus well outside any lawful or appropriate exercise of its statutory authority, and the Subpoena is invalid.

**B.      The EEOC is Barred From Relying on § 1635.8(d) by Principles of Due Process, Equitable and Judicial Estoppel, and Fundamental Fairness Because that Provision Was Not in Effect in June 2010.**

**1.      The EEOC's Initial Policies and Guidance regarding Employer Notification to Healthcare Providers Under GINA.**

As noted above, the EEOC initially stated that is investigation was premised exclusively on § 1635.8(d) in the final GINA regulations, which were issued in November 2010 and were not effective until January 2011. Notably, this provision was not included in the proposed regulations which were in effect in June 2010, which is the timeframe relevant to Mr. Peel's claims. At that time, the proposed GINA regulations specifically <u>did not require</u> that an employer provide notification to a healthcare provider not to ask for family medical history. In fact, the proposed regulations specifically stated that such a notification was not required and

would be within the discretion of the employer. The pertinent portion of the proposed regulations

state:

> In addition to complying with relevant EEOC guidance, covered entities <u>may wish to take proactive measures to avoid even the inadvertent acquisition of genetic information</u>. For example, as a best practice, an employer that asks an employee to have a health care professional provide documentation about a disability in support of a request for accommodation <u>could</u> specifically indicate on a questionnaire provided for this purpose that family medical history or other genetic information about the employee <u>should not be provided</u>.

(Exhibit I.) (emphasis added).

In addition, in responses by the Department of Labor ("DOL") to questions by private

employers in May 2010, the DOL made clear that nothing in GINA prevents a health care

professional who is providing health care services from asking an individual about family

medical history. *See* abanet.org, Question 12 in Questions and Proposed Answers for the

Department of Labor Staff for the 2010 Joint Committee of Employee Benefits Technical

Session Held on May 5, 2010, http://www.abanet.org/jceb/2010/2010DOLQA.pdf (last visited

November 30, 2011).

### 2.  The EEOC's Change of Policy in the Final GINA Regulations.

The final GINA regulations were issued in November 2010 and expressly state that they

are not effective until January 2011. In the final regulations, § 1635.8(d) provides that employers

are required to tell health care providers not to collect genetic information when they are

conducting examinations related to employment. Even assuming this regulation is deemed valid,[6]

there is nothing in the statute or any prior published guidance that would have put an employer

on notice in June 2010 that it was required to inform private healthcare providers not to ask for

family medical history.

---

[6] Nestlé maintains that this final regulation is not a proper exercise of the agency's rule-making authority and that the regulation is invalid.

### 3.    Estoppel and/or Due Process Concerns Bar Any Reliance on § 1635.8(d).

Because there is nothing in GINA itself to support the EEOC's position, the only support for the EEOC's determination that Nestlé violated GINA in June 2010 is based on a retroactive application of § 1635.8(d).  The EEOC, however, does not have the authority to apply its regulations retroactively.  Numerous courts have held that retroactive application would violate due process and basic principles of fairness. *See, e.g., United States v. AMC Entm't, Inc.*, 549 F.3d 760, 768-70 (9th Cir. 2008) (refusing to apply interpretation of EEOC regulation to defendant retroactively, in part, because "[t]hose regulated by an administrative agency are entitled to know the rules by which the game will be played" (citation and quotation signals omitted)); *see also Yukon-Kushokwim Health Corp., Inc. v. Trust Ins. Plan for Sw. Alaska*, 884 F. Supp. 1360, 1368 (D. Alaska 1994) (refusing retroactive application of the ADA because to do so would impose additional, unforeseeable obligations on private employers); *Raya v. Maryatt Indus.*, 829 F. Supp. 1169, 1174 (N.D. Cal. 1993) (rejecting retroactive application of the ADA, in part, because it imposes new and unanticipated obligations that "rais[e] due process concerns").

In addition to the due process concerns associated with retroactive application of § 1635.8(d), the EEOC is estopped from taking a position in this action contrary to its published guidance in effect in June 2010.  The Supreme Court has commented, "when the government acts in misleading ways, it may not enforce the law if to do so would harm a private party as a result of government deception." *Heckler v. Cmty. Health Servs. of Crawford County, Inc.*, 467 U.S. 51, 60 n. 12 (1984), *citing United States v. Pa. Indus. Chem. Corp.*, 411 U.S. 655, 670, 670-675 (1973); *Moser v. United States*, 341 U.S. 41 (1951).  The Supreme Court has also held:

> Where a party assumes a certain position in a legal proceeding, and
> succeeds in maintaining that position, he may not thereafter,

simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced to the position formerly taken by him.

*State of New Hampshire v. State of Maine*, 532 U.S. 742, 749 (2001).[7]

The doctrine of judicial estoppel has been applied to prevent a party that has taken one position in litigation from later reversing its position where it is to that party's advantage to do so. *Levinson v. United States*, 969 F.2d 260, 264 (7th Cir. 1992). Judicial estoppel applies with equal force when a party seeks to repudiate statements made in an administrative proceeding, rather than a judicial proceeding. *Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1417 (7th Cir. 1993).

The elements of estoppel apply to bar the enforcement of the subpoena here. The EEOC's positions are inconsistent. The EEOC promulgated proposed regulations and issued guidance in 2010 that affirmatively instructed employers that they need not provide notifications to healthcare providers not to request family medical history. Even if the EEOC is not intending to harass and overwhelm an employer facing an uncertain economy, the EEOC has "deliberately chang[ed] positions" and the subpoena should not be enforced to protect the integrity of the administrative process. *See New Hampshire*, 532 U.S. at 749.

**C.**   **The Information Sought in the Subpoena Bears No Relevance to  Mr. Peel's  Charge and Amounts to an Unlawful Fishing Expedition Regarding Private  and Confidential Medical Information of Non-Charging Parties.**

In investigating the charge, the EEOC has the authority to request specific information about the violations alleged and relevant policies or practices. 29 C.F.R. § 1601.15; 29 C.F.R. § 1626.4. The EEOC's power of investigation is anchored to the specific charge being investigated, and the EEOC is entitled to examine only evidence relevant to "the charge under

---

[7] Unlike equitable estoppel, judicial estoppel applies against the government in the absence of affirmative misconduct. *Ismie Mut. Ins. Co. v. United States Dep't of Health and Human Servs.*, 413 F. Supp. 2d 954, 959 (N.D. Ill. 2006).

investigation." *EEOC v. Shell Oil Co.*, 466 U.S. 54, 68-69 (1984).  "The Commission is not empowered to conduct general fact-finding missions concerning the affairs of the nation's work force and employers. The only legitimate purpose for an EEOC investigation is to prepare for action against an employer charged with employment discrimination, or to drop the matter entirely if the . . . charge . . . [is] unfounded."  The Supreme Court has cautioned courts not to allow the relevance rule to be construed so loosely as to allow the rule to become a "nullity."  *Id.* at 69.  Courts have recognized that the rule must be construed to prevent the EEOC from engaging in "fishing expeditions." *EEOC v. United Air Lines, Inc.*, 287 F.3d 643, 653 (7th Cir. 2002) (citing *EEOC v. K-Mart Corp.*, 694 F.2d 1055, 1066 (6th Cir. 1982)) (explaining that courts serve to control the EEOC's authority and prevent "fishing expeditions").

As a foundational matter, Mr. Peel's charge contains no allegation of a substantive GINA violation. (Exhibit B.)  While the box for "genetic information" is checked, the particulars of the Charge contain no allegation of a violation of GINA.  (Exhibit B.)  Moreover, the charge is limited temporally to June 2010.  The Subpoena, on the other hand, is predicated *only* on the EEOC's intent to investigate "other potential victims of discrimination" under GINA and requests *facility-wide* information for *all* job positions for a time period of over 2 years, and information about hiring and termination for *all employees* who submitted to a physical or medical examination at Nestlé's request. In this vein, the Subpoena seeks private and confidential medical information about other employees that are not part of the underlying charge. To be clear, Nestlé objects to providing confidential medical information of other employees who are not part of the charge. Moreover, there is no basis to use Mr. Peel's charge as a springboard for a systemic investigation into potential victims of genetic information discrimination where the charge itself contains no such substantive allegation.

16

Courts have steadfastly refused to enforce subpoenas that request information that is extra-geographical and ranges beyond the job position held by the charging party. The recent holding in *EEOC v. Loyola Univ. Med. Ctr.*, 2011 U.S. Dist. LEXIS 118286 (N.D. Ill. Oct. 13, 2011) is particularly instructive in the instant case.  In that case, the EEOC received and investigated a charge alleging that an individual was subjected to a medical examination in violation of the ADA.  *Id.* at *8-*9.  During its investigation, the EEOC subpoenaed information pertaining to other individuals required by the respondent to submit to a "fitness for duty exam" from January 2008 to the present.  *Id.* at *3-*4.  The court denied the EEOC's application to enforce the subpoena, explaining that the information sought was not relevant to the underlying charge and, even under a "broader theory" that EEOC investigations are not limited to the specific charge of any complainant, was "not sufficiently tailored to the particular circumstances of the investigation." *Id.* at *9.

Similarly instructive is the court's ruling in *EEOC v. UPMC*, 2011 U.S. Dist. LEXIS 55311 (W.D. Pa. May 24, 2011). (Exhibit O).  There, the EEOC investigated a charge that an individual employee had been terminated in violation of the ADA when she was allegedly terminated after failing to report to work following the expiration of her medical leave.  *Id.* at *3-*4.  During its investigation, the EEOC subpoenaed information pertaining to all employees in the respondent's Pittsburgh region who were terminated in accordance with the respondent's disability policies from July 2008 to the present.  *Id.* at *5-*6.  The court denied the EEOC's application and ruled that the subpoena exceeded the EEOC's investigative authority.  *Id.* at *12. The court explained that the subpoena at issue "constitutes a 'fishing expedition' to discover the existence of other potential claimants rather than a reasonable effort to develop information that is relevant to [the individual charge at issue.]" *Id.*

17

Likewise, in the *United Air Lines* case, the Seventh Circuit found that the EEOC's subpoena was not relevant because it was not limited to individuals who were similarly situated, *i.e.*, in the same position as the Mr. Peel.  287 F.3d at 654.  As in the *United Air Lines* case – where the EEOC sought to obtain information of each United employee "who has taken a medical leave of absence," – the EEOC is attempting to investigatively troll through Nestlé's hiring and termination decisions with respect to its workforce at the Mount Sterling facility.  *See id.*  The subpoena thus violates the *United Air Lines* ruling because "nothing in the charge suggests systemic discrimination."  *Id.* at 655; *see also EEOC v. Randstad*, 765 F. Supp. 2d 734, 741-42 (D. Md. 2011) (holding that information for all employee placements over five-year period was not relevant to the individual charge of discrimination being investigated).

The Sixth Circuit cases cited by the EEOC at page 7 of the Memorandum in support of its argument that the information sought is relevant are all readily distinguishable.  In *EEOC v. Roadway Express, Inc.*, 261 F.3d 634, 638-39 (6th Cir. 2001), the court concluded that given the "systemic nature" of the allegations, evidence that the respondent discriminated in other situations would cast light on whether the practices complained of were motivated by unlawful discrimination.  Similarly, in *Blue Bell Boots, Inc. v. EEOC*, 418 F.2d 355, 356, 358 (6th Cir. 1969), the EEOC was investigating multiple charges of a systemic nature alleging that the employer restricted employment opportunities for minorities and maintained  a discriminatory promotion program, and the court concluded that "the existence of patterns of racial discrimination in job classifications or hiring situations other than those of the complainants may well justify an inference that the practices complained of here were motivated by racial factors." In *EEOC v. Cambridge Tile Mfg. Co.*, 590 F.2d 205, 206 (6th Cir. 1979), the EEOC was investigating multiple charges of race and sex discrimination, and the court, relying on *Blue Bell*

*Boots*, concluded that whether the employer was discriminating against other minorities may shed light on whether the employer was motivated by race or sex in its treatment of the charging parties.  Finally, in *EEOC v. Roadway Express, Inc.*, 750 F.2d 40, 41 (6th Cir. 1984), the EEOC was again investigating multiple charges of race discrimination.  Furthermore, the prior decision of the district court in the case reveals that the subpoenaed information at issue pertained to the treatment of employees similarly situated to the charging parties, which was relevant in determining whether the charging parties were treated less favorably.  *EEOC v. Roadway Express, Inc.*, 580 F. Supp. 1063, 1067 (W.D. Tenn. 1984).

The allegations made by Mr. Peel and the information sought by the EEOC in the instant case bear no resemblance to any of the above cases cited by the EEOC.  Unlike the cases cited by the EEOC, it cannot reasonably be argued here that the information sought in the Subpoena arises from Mr. Peel's charge.  Rather, it is clear that the Subpoena is aimed at uncovering other alleged "victims" of GINA discrimination based on the EEOC's unsupported conclusion that Nestlé violated GINA by sending employees to private physicians.  *Loyola Univ. Med. Ctr.* and *UPMC* illustrate that this type of information is not relevant given the allegations made by Mr. Peel.  *See* 2011 U.S. Dist. LEXIS 118286, at *8-*9; 2011 U.S. Dist. LEXIS 55311, at *12.

Finally, the EEOC has no basis to believe that Mr. Peel's charge has any merit.  Thus, the EEOC is required to end the investigation under controlling Supreme Court authority.  "The only legitimate purpose for an EEOC investigation is to . . . drop the matter entirely if the . . . charge . . . [is] unfounded."  *Shell Oil Co.*, 466 U.S. at 68-69.  Where, as here, the information submitted establishes that the Company acted lawfully and that the Mr. Peel has not been discriminated against or subjected to any unlawful employment practice, there is no authority for proceeding

further.  *Id.*  Instead of dropping the matter, however, the EEOC has chosen to pursue a paradigmatic fishing expedition for information.

<u>**CONCLUSION**</u>

For all the reasons set forth above, Nestlé respectfully requests that the Court deny enforcement of the EEOC's subpoena and award Nestlé its fees and costs incurred for defending this action.[8]

Respectfully submitted,

<u>s/Stephanie E. Lewis</u>
Stephanie E. Lewis (Pro Hac Vice)
lewiss@jacksonlewis.com
Andreas N. Satterfield, Jr. (Pro Hac Vice)
satterfielda@jacksonlewis.com

JACKSON LEWIS LLP
One Liberty Square
55 Beattie Place, Suite 800
Greenville, SC  29601

ATTORNEYS FOR RESPONDENT

---

[8] Nestlé previously advised the EEOC that it would seek fees and costs for defending this action because the Subpoena is not predicated on any good faith interpretation of existing law or extension thereof. (Exhibit J.)  In light of the procedural background and the unreasonableness of the EEOC's interpretation and actions in this matter, Nestlé maintains that a fee and cost award in its favor is appropriate.

## CERTIFICATE OF SERVICE

The undersigned certifies that on December 1, 2011, the foregoing Response in Opposition to Application for Order to Show Cause was filed through the ECF system, which will send a notice of electronic filing to:

> Aimee L. McFerren
> Equal Employment Opportunity Commission
> 600 Dr. Martin Luther King Jr. Place, Suite 268
> Louisville, KY 40202


> s/Stephanie E. Lewis
> Stephanie E. Lewis (Pro Hac Vice)
> lewiss@jacksonlewis.com
> Andreas N. Satterfield, Jr. (Pro Hac Vice)
> satterfielda@jacksonlewis.com
>
> JACKSON LEWIS LLP
> One Liberty Square
> 55 Beattie Place, Suite 800
> Greenville, SC  29601