IN THE UNITED STATE DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

EQUAL EMPLOYMENT OPPORTUNITY )
COMMISSION, )
　　　　　　　　　　　　　　　　 )
　　　　　　　　Applicant, )
　　　　　　　　　　　　　　　　 )
vs. )　　　　　C.A. NO.: 5:11-cv-00358-JMH-REW
　　　　　　　　　　　　　　　　 )
NESTLÉ PREPARED FOODS )
COMPANY, )
　　　　　　　　　　　　　　　　 )
　　　　　　　　Respondent. )
_____

### SUR-REPLY IN OPPOSITION TO APPLICATION FOR ORDER TO SHOW CAUSE

Respondent Nestlé Prepared Foods Company (hereinafter "Nestlé" or "the Company") respectfully submits this Sur-Reply in Opposition to the Equal Employment Opportunity Commission's ("EEOC") Application For Order To Show Cause Why An Administrative Subpoena ("Subpoena") Should Not Be Enforced.  The EEOC's Reply Brief (Docket No. 13) makes clear that its purported authority to investigate is premised upon a number of factual and legal errors and that the material sought in the Subpoena is not relevant to its investigation of the underlying Charge of Discrimination.  The articulated basis of the EEOC's argument that it is entitled to the information requested in its Subpoena is that the Genetic Information Non-Discrimination Act's ("GINA") prohibition against "requesting, requiring, or purchasing" genetic information applies to "a physician acting at the employer's behest."  (Reply Br. at 3; Transcript of Oral Argument at 5[1].) As discussed more fully below, there is no factual or legal support for this argument.

_____
[1] Cited excerpts from the transcript are attached hereto as Exhibit A.

<u>ANALYSIS</u>

**A.**      **<u>The EEOC Has Misstated Several Facts Regarding the Fitness For Duty Examination and Nestlé's Relationship with Dr. McLaughlin, and there is No Evidence of An Agency Relationship.</u>**

Nestlé has previously set forth the undisputed facts regarding Mr. Peel's employment and fitness for duty examination and will not undertake to repeat those here. However, it is important to correct several factual misstatements that are contained for the first time in the EEOC's Reply Brief regarding the referral for the fitness for duty examination and the relationship between Dr. McLaughlin and Nestlé. These incorrect factual assertions appear designed to bolster the EEOC's position that the Subpoena is a valid exercise of its authority because of the asserted agency relationship between Dr. McLaughlin and Nestlé. First, the EEOC states that "Mr. Peel was not given the option of being examined by his personal treating physician" for the fitness for duty examination. (Reply Br. at 4.) It is not correct to suggest that Mr. Peel was foreclosed from seeing his own private physician. Although Nestlé provided Mr. Peel the referral to be seen by Dr. McLaughlin for the fitness for duty examination, he was free to decline the referral and visit a physician of his own choosing. (Declaration of Steve Feamster ¶ 5, attached as Exhibit B (hereinafter referred to as Feamster Decl.).) To be clear, Nestlé would have allowed Mr. Peel to see a different physician for the examination had he requested it. (Feamster Decl. at ¶ 5.)

Next, the EEOC states that Nestlé "has long utilized Dr. McLaughlin's services, sending employees to him for fitness for duty and Workers' Compensation exams for approximately 20 years." (Reply Br. at 4.) In support, the EEOC cites a Declaration of one of its investigators who states he "spoke to a Physician's Assistant named Fairshinda" on December 11, 2011 who told the investigator that "she did not know the exact number of years" that Dr. McLaughlin had been referred patients by Nestlé, but that she "estimated" that he had received such referrals for

2

"over 20 years." (Reply Br. Ex. C ¶¶ 3.) Based only on this Declaration, the EEOC states in a conclusory fashion, "the entities have shared some sort of arrangement for the sole purpose of completing employment-related medical exams for nearly 20 years." (Reply Br. at 7.) This statement is not correct and is not supported by any credible or admissible evidence.[2] Dr. McLaughlin has submitted a Declaration, attached hereto as Exhibit C, and has confirmed that the Declaration provided by the EEOC investigator is inaccurate and not reliable.[3] (Declaration of Dr. McLaughlin at ¶¶ 5-6 (hereinafter referred to as McLaughlin Decl.).) Nestlé has not even had a factory in Mount Sterling for 20 years. (Feamster Decl. at ¶ 8.) In fact, Nestlé has referred patients to Dr. McLaughlin for between 2-3 years. (Feamster Decl. at ¶ 9; (McLaughlin Decl. at ¶ 6).)

The EEOC also incorrectly suggests that Nestlé exclusively refers patients to Dr. McLaughlin, stating that "the precise nature of and the degree of exclusivity present in Nestle's relationship with Dr. McLaughlin is unclear at this point." (Reply Br. at 7.) Again, this is not correct. Nestlé does not exclusively refer patients to Dr. McLaughlin. (Feamster Decl. at ¶ 7; (McLaughlin Decl. at ¶ 5).) Nestlé refers employees to private physicians in the Mount Sterling Community, of which Dr. McLaughlin is one. (Feamster Decl. at ¶ 7.)

Moreover, Dr. McLaughlin has confirmed that he viewed Mr. Peel as his patient upon seeing him in connection with the fitness for duty examination, (McLaughlin Decl. at ¶ 8), that the standard intake form that he used with Mr. Peel is an AMA-approved form, (McLaughlin Decl. at ¶ 9), he considers the information he requested necessary to his practice of medicine, (McLaughlin Decl. at ¶ 9), that he is not in any contractual relationship with Nestlé, (McLaughlin Decl. at ¶ 4), and Nestlé does not control his practice of medicine in any respect,

---

[2] This speculative hearsay is not admissible evidence and could be disregarded by the Court on that basis alone.
[3] Fairshinda is Dr. McLaughlin's wife and does not have any knowledge of when Dr. McLaughlin first received a referral from Nestlé. (McLaughlin Decl. at ¶ 6.)

(McLaughlin Decl. at ¶ 7).  Accordingly, the entire factual predicate for the EEOC's argument in its Reply Brief that Dr. McLaughlin was an agent of Nestlé is unsound.

During oral argument in this matter, the Court asked the EEOC to articulate why it believed Dr. McLaughlin to be an agent, and the EEOC made clear that it has no factual basis to support the agency theory upon which its purported authority for the Subpoena is predicated:

> Q.  Okay, and he is an agent why? Tell me how he becomes an agent.
>
> A. Well, at this point we have not interviewed him.  We know very little about him in particular or any of the other relationships they may have with the physicians to whom they refer employees for work-related exams. But it's certainly possible that because the employee had no say over whether or not that was the doctor he was going to be sent to, it wasn't the employee's own treating physician, the employee did not pay for the exam, because of those types of facts, that there was some sort of relationship, if not contractual, then through agency or some other way that employees were being referred to these physicians for work-related exams.

(Tr. at 6.)

The Court also requested that the EEOC tender the fax coversheet that went to Dr. McLaughlin from Nestlé.  (Tr. at 44.)  The fax coversheet that Nestlé sent Dr. McLaughlin is attached hereto as Exhibit D. Although the EEOC does not specifically reference the fax coversheet in its Reply Brief, this also does not suggest any agency relationship between Dr. McLaughlin and Nestlé.  (Exhibit D.)

In short, there is no factual support for the argument that Dr. McLaughlin or any other private physician to whom Nestlé simply refers patients for employment-related examinations is an "agent" of Nestlé or that Nestlé "violated GINA" when Dr. McLaughlin had Mr. Peel complete his office's standard intake form. (Reply Br. at 3.)  Because the underlying factual assumptions are incorrect, and because the EEOC does not have the statutory or regulatory to

4

investigate the actions of private physicians, the Subpoena is not within the scope of the EEOC's authority.

**B.**　　**There is No Legal Authority for the EEOC's Underlying Proposition that A Physician "Acting at the Employer's Behest" is the Employer for Purposes of Title II of GINA.**

The EEOC is attempting to create a new rule under GINA whereby the acts of any private physician during an employment-related examination would render an employer automatically liable because the examination was "at the behest" of the employer.  (*See, e.g.*, Reply Br. at 3; EEOC Mem. Supp. Application at 5, 7.)  Specifically, the EEOC argues that a GINA violation <u>is</u> <u>complete</u> once a doctor with whom a covered entity has referred a patient requests family medical information, regardless of whether the employer instructed the physician to request the information and without limitation to whether the employee chose his or her own physician for the examination.  (Reply Br. at 4.) There is no legal authority for this type of rule.

As a threshold matter, the EEOC relies primarily on text from the ADA that is not contained in GINA. (Reply Br. at 4.)  In addition, the ADA cases cited by the EEOC for this point do not stand for the proposition for which they are cited.  In *Holiday, Gillen*, *Rodriguez,* and *Piquard* (cited by the EEOC at page 4 of its Reply Brief), the court does not hold that an employer is automatically liable for discrimination because of the actions of the doctors to whom they referred patients.  Rather, each of these decisions makes clear that an independent act by the employer is required for an employer to violate the ADA.  For example, in *Holiday*,[4] the plaintiff alleged that the defendant employer withdrew its offer of employment to him because he was HIV positive, in violation of the ADA.  *Id.* at 640.  The facts showed that the defendant employer had contracted with a health care provider to perform a medical examination on plaintiff, as required by state statute, to determine if he was qualified to be a police officer.  *Id.*  The

---

[4] *Holiday v. City of Chattanooga*, 206 F.3d 637 (6th Cir. 2000).

defendant had an arrangement with a team of doctors whereby they mutually determined the scope of examinations. *Id.* at 641.   The doctor who performed the medical examination on the plaintiff learned that the plaintiff was HIV positive and had other health conditions, and ultimately concluded that the plaintiff was unable to perform the duties of a police officer.   *Id.* After reviewing the doctor's report, the defendant made the decision to withdraw its offer of employment.   *Id.*   In addition to relying on the doctor's report that the plaintiff was not able to perform the duties of a police officer, the defendant also determined that the plaintiff's HIV status rendered him a threat to others.   *Id.*   In reversing the grant of summary judgment to the defendant, the court explained that the defendant had a duty to conduct an individualized inquiry into whether the plaintiff was qualified for the position.   *Id.* at 642.   The court determined that there were genuine issues of material fact regarding whether the plaintiff was qualified for the police officer position and whether the defendant withdrew the offer of employment because of the plaintiff's HIV status.   *Id.*   Significantly, the court did not hold that the employer "may not do through a third-party what it may not do directly, regardless of whether or not there is a contract between the entities," as the EEOC asserts.   (Reply Br. at 4.)   Rather, the court held that the employer could be held liable for *its own action* of failing to hire the plaintiff after failing to conduct an individualized inquiry into whether the plaintiff was qualified for the job.

The remaining cases cited by the EEOC are similar in the scope of their holdings and are not on point here because there is no suggestion that Nestlé ever requested, received, or acted on any genetic information or otherwise took some independent action that violated GINA.  *Piquard v. City of East Peoria*, 887 F. Supp. 1106 (C.D. Ill. 1995); *Rodriguez v. ConAgra Grocery Prods. Co.*, 436 F.3d 468, 477 (5th Cir. 2006); *Gillen v. Fallon Ambulance Serv., Inc.*, 283 F.3d 11, 31 (1st Cir. 2002).  There is simply nothing in any of these cases that supports the argument that an

employer could be deemed to automatically violate GINA because a doctor to whom the employer referred a patient requested family medical history.

Next, the EEOC cites *Garlitz v. Alpena Reg'l Med. Ctr*, 2011 U.S. Dist. LEXIS 138561 (E.D. Mich. Dec. 2, 2011).  Again, the EEOC's reliance on *Garlitz* is misplaced, as this case is materially distinguishable and does not support the argument that an employer's referral to a private physician could alone create liability under GINA.  In *Garlitz*, the court held that there was a factual issue about whether the third party medical provider was an agent of the employer under Title VII because (1) there was evidence of an oral contract between the parties; (2) there was evidence that the employer had the right to control the manner in which the provider conducted the examination; (3) there was evidence that the third party medical provider had been delegated the right to make the hiring decision; and (4) the relationship between the entities was "essentially exclusive." *Id.* at **27-34.  None of those facts are present here. Most importantly, there is no suggestion or evidence that Nestlé had the right to control Dr. McLaughlin with respect to his examinations.  (Decl. of Feamster at ¶ 6; Decl. of McLaughlin at ¶ 7.)  Moreover, nothing in the *Garlitz* decision stands for the proposition that an employer is automatically liable for the acts of a private physician to whom the employer referred a patient under Title II of GINA.[5]

Perhaps most importantly, the EEOC's repeated statement that an employer is liable for the acts of every "physician acting at the employer's behest" under GINA is not rooted in the text of GINA or any of its interpreting regulations. (Reply Br. at 3; Tr. at 5.) Nowhere in the EEOC's briefing or argument is there a citation to any statutory text or regulation which would

---

[5] The EEOC also cites *Swallow v. Barnes  & Noble Book Stores, Inc.*, 128 F.3d 990, 996 (6th Cir. 1997). That decision likewise does not support the EEOC's argument. There, the court held that the campus bookstore operated by Barnes & Noble was not an "agent" of the university for purposes of Title VII.  *Id.*

suggest that Title II of GINA was intended to render employers automatically liable for the actions of a private physician to whom an employer referred a patient. This absence of legal authority stands in stark contrast to the authority cited by Nestlé in the text of GINA and its regulations that make clear that a private physician cannot be deemed an "employer" under Title II of GINA simply because the employer referred a patient to the physician for an employment-related examination.  (Nestlé Resp. Opp. Application at 10, Docket No. 8.)

The EEOC's attempt to create this new rule in its enforcement of GINA has grave implications for the employer and medical communities. For example, during oral argument, the Court questioned the EEOC regarding whether it would continue to assert that a GINA violation would occur if an employee visited his private physician for a fitness for duty examination. (Tr. at 36-39.)  Obviously, an employee's own physician would have family medical history in the medical file of the patient when conducting a fitness for duty examination. The EEOC responded to the Court's questioning by stating that it was "not prepared to answer that," noting that "[i]t's a very good question," and indicating that perhaps there would not be a violation as long as the information "is not going to be shared with Nestle."  (Tr. at 39.)  Upon further questioning regarding how the EEOC could claim that a physician was an agent of the employer in one context but not the other, the EEOC simply pointed to the notice required by § 1635.8(d) of the final regulations which does not contain the word agency, does not suggest a distinction between physicians chosen by an employee and those chosen by the employer, and was not in effect at the time of the events giving rise to the Charge of Discrimination.  (Tr. at 38-39.) Notably, in its Reply Brief, the EEOC again has not attempted to address how its position here would logically withstand scrutiny in the context of a fitness for duty examination performed by an employee's own physician.

**C.    Although the EEOC Purports Not to Rely on § 1635.8(d), it is Clear By Its Briefing and Argument that it is Relying on this Provision, Which is Impermissible As a Matter of Law under Well-Settled Principles of Due Process.**

The EEOC has disavowed any intent to rely on 29 C.F.R. § 1635.8(d) numerous times in this matter. (Exhibit M to Resp. Opp. Application at 7; Reply Br. at 14; Tr. at 33.)  During oral argument, counsel for the EEOC stated, "[w]e are not relying on §1635.8(d) of the regs to enforce the subpoena, period. We are not. We don't make that argument."  (Tr. at 33.)  However, it is clear that the EEOC is in fact relying on § 1635.8(d) to attempt to hold Nestlé responsible for not providing a notice to Dr. McLaughlin that was not required at the time. For example, at page 7 of the oral argument transcript, counsel for the EEOC explained, "[i]f that is their practice, referring employees to physicians for these types of exams **without giving any sort of guidance or notice to the physician that they are not supposed to collect this type of information** . . . that is why I want to explore that." (Tr. at 7-8 (emphasis added).) When the Court expressed concern regarding how employers would be able to figure out how to avoid liability given the EEOC's agency arguments, counsel for the EEOC again stated, "I think **you can look at what the final reg says**, and it says that when an employer directs a health care professional to perform an employment-related exam, **that they need to make sure they tell that employer not to request family medical history**. . . ." (Tr. at 39 (emphasis added).) Counsel for the EEOC later said, "Well, the physician was not given the warning, **the notice that he was supposed to have been given from Nestle**, so any liability would flow to Nestle. . . ." (Tr. at 40 (emphasis added).)

These arguments make clear that the EEOC's motion here is in fact premised on retroactive application of § 1635.8(d).  As set forth in Nestlé's initial memorandum in response to the motion to enforce the Subpoena, and as also explained in the Brief *Amici Curia*e Of The

Equal Employment Advisory Council And Chamber Of Commerce Of The United States, retroactive application of this regulation raises serious due process concerns. The EEOC's attempt to rely on this provision to support some claimed violation of the law by Nestlé should be rejected.

**D.**   **The Subpoena Seeks Information That is Not Relevant to the Underlying Charge.**

During oral argument, the EEOC stated that the sole theory of relevance in seeking the Subpoenaed information is because in its view, it has uncovered an instance of GINA discrimination, so it is now entitled to a "broader probe" to determine if there are other similarly situated victims. (Tr. at 7-8.)  However, when questioned about what in the investigation to date would suggest that there is a systemic issue at Nestlé, counsel for the EEOC responded, "At this point we don't know. We won't know that until we have the information, and then we can determine whether or not that's the case."  (Tr. at 8.)  This response illustrates that nothing in the investigation to date suggests a policy, practice, or "broader picture of discrimination" that could even arguably entitle the EEOC to seek to expand the investigation of the individual Charge Of Discrimination.  *See, e.g.*, *General Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 158-59 (1982).

**CONCLUSION**

For all the reasons set forth above and those set forth in the Brief *Amici Curiae* Of The Equal Employment Advisory Council And Chamber Of Commerce Of The United States, which arguments are incorporated herein by reference, Nestlé respectfully requests that the Court deny enforcement of the EEOC's subpoena and award Nestlé its fees and costs incurred for defending this action.

Respectfully submitted,

s/Stephanie E. Lewis
Stephanie E. Lewis (Pro Hac Vice)
lewiss@jacksonlewis.com
Andreas N. Satterfield, Jr. (Pro Hac Vice)
satterfielda@jacksonlewis.com

JACKSON LEWIS LLP
One Liberty Square
55 Beattie Place, Suite 800
Greenville, SC  29601

ATTORNEYS FOR RESPONDENT

11

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that on January 23, 2012, the foregoing Sur-Reply in Opposition to Application for Order to Show Cause was filed through the ECF system, which will send a notice of electronic filing to:

> Aimee L. McFerren
> Equal Employment Opportunity Commission
> 600 Dr. Martin Luther King Jr. Place, Suite 268
> Louisville, KY 40202

> s/Stephanie E. Lewis
> Stephanie E. Lewis (Pro Hac Vice)
> lewiss@jacksonlewis.com
> Andreas N. Satterfield, Jr. (Pro Hac Vice)
> satterfielda@jacksonlewis.com
>
> JACKSON LEWIS LLP
> One Liberty Square
> 55 Beattie Place, Suite 800
> Greenville, SC  29601