UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, ) ) ) Applicant, ) ) v. ) ) NESTLE PREPARED FOODS, ) ) Respondent. ) ) | Case No. 11-MC-358-JMH-REW |

**BRIEF *AMICI CURIAE* OF THE EQUAL EMPLOYMENT ADVISORY COUNCIL AND CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA IN OPPOSITION TO APPLICATION FOR ORDER TO SHOW CAUSE AND IN SUPPORT OF RESPONDENT NESTLE PREPARED FOODS**

The Equal Employment Advisory Council (EEAC) and Chamber of Commerce of the United States of America (Chamber) respectfully submit this brief *amici curiae*, contingent upon granting of the accompanying motion for leave to file. The brief urges this Court to deny the Equal Employment Opportunity Commission's Application for Order to Show Cause, and thus supports the position of Respondent Nestle Prepared Foods.

OF COUNSEL:

Robin S. Conrad
NATIONAL CHAMBER
   LITIGATION CENTER, INC.
1615 H Street, N.W.
Washington, DC 20062
(202) 463-5337

Rae T. Vann
*Counsel of Record*
Pro Hac Vice
NORRIS, TYSSE, LAMPLEY & LAKIS, LLP
1501 M Street, NW, Suite 400
Washington, DC 20005
rvann@ntll.com
(202) 629-5600

Attorneys for *Amici Curiae*
Equal Employment Advisory Council and
Chamber of Commerce of the United States
of America

January 23, 2012

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ iii

INTEREST OF THE *AMICI CURIAE* ..................................................................................1

STATEMENT OF THE CASE..............................................................................................2

SUMMARY OF ARGUMENT ..............................................................................................3

ARGUMENT .........................................................................................................................5

I. THE EEOC IS NOT ENTITLED TO JUDICIAL ENFORCEMENT OF AN ADMINISTRATIVE SUBPOENA SEEKING INFORMATION THAT IS IRRELEVANT TO THE CHARGE OF DISCRIMINATION UNDER INVESTIGATION..................................................................................................5

    A.    The EEOC's Investigative Authority Under GINA Is Limited To Investigation Only Of Those Issues Related To The Underlying Charge Of Discrimination.......5

    B.    The EEOC Must Obtain Appropriate Jurisdictional Authority To Conduct *Any* Investigation If Employers Are To Be Afforded Due Process Guarantees .............8

II. THE EEOC'S CONTENTION THAT PRIVATE PHYSICIANS ARE "EMPLOYERS" FOR PURPOSES OF GINA'S EMPLOYMENT PROVISIONS IS INCONSISTENT WITH THE TEXT AND PURPOSE OF THE STATUTE ................................................8

CONCLUSION....................................................................................................................10

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

FEDERAL CASES

*EEOC v. Bailey Co.*, 563 F.2d 439 (6th Cir. 1977) ..................................................................8

*EEOC v. City of Milwaukee*, 919 F. Supp. 1247 (E.D. Wis. 1996) ..................................................7

*EEOC v. General Electric Co.*, 532 F.2d 359 (4th Cir. 1976) .........................................................7

*EEOC v. Shell Oil Co.,* 466 U.S. 54 (1984) ............................................................................... *passim*

*General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147 (1982) .......................................7

*Joslin Dry Goods Co. v. EEOC*, 483 F.2d 178 (10th Cir. 1973) ......................................................7

FEDERAL STATUTES

Americans with Disabilities Act of 1990,
    42 U.S.C. §§ 12101 *et seq.*....................................................................................................1, 2

Title II of the Genetic Information Nondiscrimination Act,
    42 U.S.C. §§ 2000ff *et seq.* ................................................................................................ *passim*

    42 U.S.C. § 2000ff-6.................................................................................................................3, 5

Title VII of the Civil Rights Act of 1964,
    42 U.S.C. §§ 2000e *et seq.*................................................................................................. *passim*

    42 U.S.C. § 2000e(b) .....................................................................................................................9

    42 U.S.C. § 2000e-5(b) .................................................................................................................5

    42 U.S.C. § 2000e-8......................................................................................................................6

    42 U.S.C. § 2000e-8(a) .................................................................................................................3

FEDERAL REGULATIONS

29 C.F.R. § 1601.12(a)(3)................................................................................................................6

29 C.F.R. § 1635.3(b) ......................................................................................................................9

29 C.F.R. § 1635.8(d) ......................................................................................................................9

74 Fed. Reg. 9056 (Mar. 2, 2009)...............................................................................................9, 10

OTHER AUTHORITIES

EEOC Compliance Manual, Investigative Procedures § 2.5 (1996 & Supp. 2012) ........................8

**INTEREST OF THE *AMICI CURIAE***

The Equal Employment Advisory Council (EEAC) is a nationwide association of employers organized in 1976 to promote sound approaches to the elimination of employment discrimination. Its membership includes approximately 300 of the nation's largest private sector companies, collectively providing employment to close to 19 million people throughout the United States. EEAC's directors and officers include many of industry's leading experts in the field of equal employment opportunity. Their combined experience gives EEAC a unique depth of understanding of the practical and legal considerations relevant to the proper interpretation and application of equal employment policies and requirements. EEAC's members are firmly committed to the principles of nondiscrimination and equal employment opportunity.

The Chamber of Commerce of the United States of America (Chamber) is the world's largest business federation, representing more than 300,000 direct members and an underlying membership of more than three million businesses and trade and professional organizations of every size and in every industry section and geographic region of the country. An important function of the Chamber is to represent the interests of its members by filing *amicus* briefs in cases involving issues of vital concern to the business community.

*Amici's* members are employers or representatives of employers that are subject to Title II of the Genetic Information Nondiscrimination Act (GINA), 42 U.S.C. §§ 2000ff *et seq.*, Title VII of the Civil Rights Act (Title VII) of 1964, 42 U.S.C. §§ 2000e *et seq.*, the Americans with Disabilities Act (ADA) of 1990, as amended, 42 U.S.C. §§ 12101 *et seq.*, as well as other labor and employment statutes and regulations. *Amici's* members have a direct and ongoing interest in the issues presented in this matter regarding the U.S. Equal Employment Opportunity

Commission's (EEOC) authority to compel the production of evidence that is not relevant to the particular charge under investigation.

*Amici* seek to assist the Court by highlighting the impact its ruling may have beyond the immediate concerns of the parties. Accordingly, this brief brings to the attention of the Court relevant matters that have not already been brought to its attention by the parties. Because of their experience in these matters, *amici* are well situated to brief the Court on the relevant concerns of the business community and the substantial significance of this case to the constituencies they represent.

## STATEMENT OF THE CASE

A complete recitation of relevant facts is set forth in Nestle's Response Brief in Opposition to Application to Show Cause (Doc. 8) and herein is incorporated by reference. In sum, Michael Peel, who worked for Nestle Prepared Foods from March 1, 2010 until June 22, 2010, filed a charge of discrimination (the "Peel charge") with the U.S. Equal Employment Opportunity Commission (EEOC) alleging that Nestle failed to reasonably accommodate and retaliated against him in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 *et seq*. Doc. 8 at 2-3. Specifically, Mr. Peel asserts that he suffers from an unspecified disability; that he was sent home without pay but was called back the following day after being cleared for full duty; and that he was denied unspecified accommodations soon after he was hired. Doc. 8-10 at 23. He also checked the box on his EEOC charge form indicating discrimination based on genetic information, but did not explain the basis for that allegation. *Id.*

As part of its investigation, the EEOC asked Nestle to provide the complete file of the physician who performed the fitness for duty examination. Doc. 8 at 3. It followed that request with a demand for information regarding "all company physicians, physicians under contract

with the company or physicians to whom the company referred employees for medical examinations," as well as information regarding all employees administered a medical examination, copies of "all medical questionnaires" provided to them and, separately, information on all company terminations since January 2010.  Doc. 8 at 3-4.  Nestle resisted, questioning the basis for the request,  Doc. 8 at 5, and the EEOC responded with a subpoena for the information, taking the position that Dr. McLaughlin "is the employer" for purposes of GINA – and thus his acquisition of genetic information constituted acquisition of genetic information by Nestle.  Doc. 8 at 6.  This action ensued.

## SUMMARY OF ARGUMENT

The EEOC is not entitled to judicial enforcement of its administrative subpoena in this case, because the information it seeks is wholly irrelevant to the underlying charge being investigated.  "Unlike other federal agencies that possess plenary authority to demand to see records relevant to matters within their jurisdiction, the EEOC is entitled to access only to evidence '*relevant to the charge under investigation*.'"  *EEOC v. Shell Oil Co.,* 466 U.S. 54, 64 (1984) (citation and footnote omitted) (emphasis added).[1]  Because of the important role it plays in the EEOC's enforcement procedure, a discrimination charge must do more than "merely . . . allege that an employer has violated [the law]."  *Id*. at 72.  Thus, courts must "strive to give effect to Congress' purpose in establishing a linkage between the Commission's investigatory

---

[1] Specifically, Title VII of the Civil Rights Act of 1964 (Title VII) provides, in relevant part:

> In connection with any investigation of a charge filed under section [2000e-5 of this title], the Commission or its designated representative shall at all reasonable times have access to, for the purposes of examination, and the right to copy any evidence of any person being investigated or proceeded against that relates to unlawful employment practices covered by this title *and is relevant to the charge under investigation.*

42 U.S.C. § 2000e-8(a) (emphasis added).  Title II of the Genetic Information Nondiscrimination Act of 2008 (GINA), 42 U.S.C. §§ 2000ff *et seq.*, incorporates "the powers, remedies and procedures" of Title VII, including its charge investigation procedures.  42 U.S.C. § 2000ff-6.

3

power and charges of discrimination," which is intended to "prevent the Commission from exercising unconstrained investigative authority …." *Id.*

In this case, the EEOC seeks to obtain far-reaching information about all physicians utilized by Nestle in connection with any employment-related medical examination since January 2010, evidently to assess whether – and to what extent – Nestle may be found to have violated GINA. Mr. Peel does not allege a substantive GINA violation, and nothing that might be revealed by the information sought will assist the agency in determining whether the charging party was subjected to unlawful disability discrimination and retaliation as alleged in the charge. Furthermore, permitting the agency to demand information pertaining to issues outside the scope of the underlying charge would unfairly deprive employers – large and small – of the important due process guarantees to which they are entitled.

The EEOC rests its actions on the false premise that private physicians, to whom an employer from time to time may refer applicants and employees for job-related medical examinations, are "employers" for purposes of GINA. In fact, neither the plain text nor the legislative history of GINA's employment provisions can be read to impose liability on a employer when a private physician (whether he acts as an agent of the employer or not) collects genetic information that was neither requested nor required – much less received – by the employer. Moreover, to the extent that the EEOC's regulations purport to require employers affirmatively to instruct health care providers not to collect genetic information, they do not represent a reasonable interpretation of the "request, require or purchase" statutory employer prohibition and therefore are entitled to no judicial deference in any event.

## ARGUMENT

I. **THE EEOC IS NOT ENTITLED TO JUDICIAL ENFORCEMENT OF AN ADMINISTRATIVE SUBPOENA SEEKING INFORMATION THAT IS IRRELEVANT TO THE CHARGE OF DISCRIMINATION UNDER INVESTIGATION**

   A. **The EEOC's Investigative Authority Under GINA Is Limited To Investigation Only Of Those Issues Related To The Underlying Charge Of Discrimination**

The U.S. Equal Employment Opportunity Commission (EEOC) is authorized by Congress to enforce Title II of the Genetic Information Nondiscrimination Act (GINA), 42 U.S.C. §§ 2000ff *et seq.*, which makes it unlawful for an employer to, among other things, discriminate in the terms, conditions or privileges of employment based on an applicant's or employee's genetic information, or to request, require, or purchase an individual's genetic information, except as permitted under six exceptions. GINA's enforcement and remedial scheme is patterned after Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§ 2000e *et seq.*[2]

"Title VII sets forth 'an integrated, multistep enforcement procedure' that … begins with the filing of a charge with the EEOC alleging that a given employer has engaged in an unlawful employment practice." *EEOC v. Shell Oil Co.,* 466 U.S. 54, 62 (1984) (quoting *Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 359 (1977) (footnote omitted)). It expressly provides that a charge "shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires." 42 U.S.C. § 2000e-5(b). In addition, the EEOC's

---

[2] GINA provides that "[t]he powers, procedures, and remedies provided in sections 705, 706, 707, 709, 710, and 711 of the Civil Rights Act of 1964 (42 U.S.C. 2000e-4 et seq.) to the Commission … alleging a violation of title VII of that Act (42 U.S.C. 2000e et seq.) shall be the powers, procedures, and remedies this title provides to the Commission … alleging an unlawful employment practice in violation of this title…" 42 U.S.C. § 2000ff-6.

5

procedural Title VII regulations require that charges include a "clear and concise statement of the facts . . . constituting the alleged unlawful employment practices." 29 C.F.R. § 1601.12(a)(3). The "evident purpose of the regulation [is] to encourage complainants to identify with as much precision as they can muster the conduct complained of." *Shell Oil,* 466 U.S. at 72.

Interpreting the EEOC's charge filing regulation, the U.S. Supreme Court in *EEOC v. Shell Oil* held that:

> Insofar as he is able, the [charging party] should identify the groups of persons that he has reason to believe have been discriminated against, the categories of employment positions from which they have been excluded, the methods by which the discrimination may have been effected, and the periods of time in which he suspects the discrimination to have been practiced.

*Id.* The reviewing court then "has a responsibility to satisfy itself that the charge is valid and that the material requested is 'relevant' to the charge . . ." before the subpoena is enforced. *Id.* at n.26.

Title VII and, by extension, GINA, expressly limit the scope of an EEOC investigation to the specific allegations raised in the charge. 42 U.S.C. § 2000e-8. In this respect, the EEOC's investigatory power is "significantly narrower than that of [some other federal agencies] who are authorized to conduct investigations, inspect records, and issue subpoenas, whether or not there has been any complaint of wrongdoing." *Id.* at 64-65 (citation omitted).

Contrary to the EEOC's claims, the charge on which its subpoena is based does not contain any allegation of an actual GINA violation. Rather, the standard form on which the charge allegations were reduced to writing simply contains, without elaboration, a "check" in the box marked "GINA." It is quite a stretch to consider such a notation, likely included by an EEOC employee performing intake duties rather than by the charging party himself, an

6

"allegation" of a substantive violation. To permit the EEOC to conduct such a broad investigation "would require us to disregard the Congressional requirement that the investigation be based on the charge." *Id.* at 655; *see also Joslin Dry Goods Co. v. EEOC*, 483 F.2d 178, 183-84 (10th Cir. 1973); *EEOC v. City of Milwaukee*, 919 F. Supp. 1247, 1259 (E.D. Wis. 1996).[3]

The EEOC's reliance on the Fourth Circuit's decision in *EEOC v. General Electric Co.* in support of its position that any individual charge of discrimination may be used as a "springboard" to investigate virtually any employment practices of an employer without limitation is misplaced. 532 F.2d 359, 364 (4th Cir. 1976) (footnote omitted). As an initial matter, *General Electric* did not arise in the context of a subpoena enforcement action, but rather pertained to the appropriate scope of an EEOC civil lawsuit. *Id.* at 362. Furthermore, the Fourth Circuit in that case did *not* give the EEOC unfettered discretion to seek out other forms of discrimination not alleged in the charge. To the contrary, it reiterated the principle that the EEOC's authority to compel the production of evidence is limited to materials relevant to the allegations in the charge. *Id.* at 364-65. The court further explained that the EEOC lacks the power to "*carte blanche*" expand a charge as it might please. *Id*. at 367-68. The test is whether new allegations "appear [] to be one[s] 'initiated' by the agency …," as opposed to ones that "grow [] reasonably out of the investigation of the initial charge." *Id*. at 368.

The EEOC's subpoena here apparently is aimed solely at uncovering evidence sufficient to establish, in the EEOC's view, a possible GINA violation and thus falls within the former

---

[3] While the EEOC correctly observes in its brief that some courts afford it fairly broad access to virtually any material that "might cast light" on the charge allegations, even the standard applied in those cases requires that the information sought have some connection to the allegations as stated in the charge. *Shell Oil*, 466 U.S. at 68-69 (footnote omitted). The EEOC simply may not "expand" or otherwise transform an individual charge into an "across-the-board attack" on a company's employment practices. *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 158-59 (1982).

7

category. The statutory framework created by Congress simply does not permit the EEOC to issue subpoenas in the hopes of identifying information that *might* provide the basis for a separate charge and, as such, its subpoena in this case should not be enforced.

> **B.    The EEOC Must Obtain Appropriate Jurisdictional Authority To Conduct *Any* Investigation If Employers Are To Be Afforded Due Process Guarantees**

If not held accountable to the statutory constraints placed on its investigative authority by Title VII, the EEOC undoubtedly will continue (even formalize) the practice of crafting vague and indefinite charges for the purpose of conducting unfettered "fishing expeditions" – in direct contravention of its statutory mandate. "Experience teaches that Government administrative agency investigations can be prone to abuse [and] are likely to be conducted more reasonably, more carefully, and more fairly, when the concerned parties are adequately notified of the causes of the investigation that are in progress." *Shell Oil*, 466 U.S. at 90 (O'Connor, J., concurring in part, dissenting in part). Even the EEOC's own *Compliance Manual* instructs investigators to draft charges "in sufficient general detail to identify the statutes, bases, and issues involved and to preserve the private suit rights of all aggrieved persons covered by the charge." EEOC Compl. Man., Investigative Procedures § 2.5 (1996 & Supp. 2012).

Allowing the EEOC to ignore these principles would deny employers any meaningful opportunity to respond to charges and unfairly rob them of the "due process guarantees" to which they are entitled. *EEOC v. Bailey Co.*, 563 F.2d 439, 450 (6th Cir. 1977) (citation omitted).

**II.    THE EEOC'S CONTENTION THAT PRIVATE PHYSICIANS ARE "EMPLOYERS" FOR PURPOSES OF GINA'S EMPLOYMENT PROVISIONS IS INCONSISTENT WITH THE TEXT AND PURPOSE OF THE STATUTE**

GINA bars employers from "requesting, requiring or purchasing" genetic information. In interpreting this statutory prohibition, the EEOC goes on to provide:

> The prohibition on acquisition of genetic information, including family medical history, applies to medical examinations related to employment. A covered entity must tell health care providers not to collect genetic information, including family medical history, as part of a medical examination intended to determine the ability to perform a job, and must take additional reasonable measures within its control if it learns that genetic information is being requested or required.

29 C.F.R. § 1635.8(d). "Family medical history," according to the EEOC, is "information about the manifestation of disease or disorder in family members of the individual." 29 C.F.R. § 1635.3(b). "Family medical history" is, by definition, an individual's genetic information. It follows that the acquisition of family medical history by an employer is unlawful unless subject to a statutory exception.

Here, the EEOC apparently has taken issue with Dr. McLaughlin's innocuous acquisition of family medical history as part of his examination of Mr. Peel. The EEOC has no enforcement authority over Dr. McLaughlin insofar as it relates to his treatment of patients. The only way the agency can construct a possible violation arising from Dr. McLaughlin's acquisition of Mr. Peel's genetic information is to argue that he, as a private physician who from time to time conducts employer-initiated workplace medical examinations, *is* the "employer" for GINA purposes.[4] The plain text of the statute cannot reasonably be interpreted that broadly, however, nor has the EEOC made any attempt in its regulatory guidance to endorse that view.

In the Preamble to its 2009 Notice of Proposed Rulemaking, the EEOC explains that GINA's legislative history suggests "the term 'family medical history [should] be understood as it is used by medical professionals when treating or examining patients.'" 74 Fed. Reg. 9056, 9059 (Mar. 2, 2009) (citation omitted). It acknowledges that physicians routinely utilize the American Medical Association (AMA)-approved "adult family medical history form" in

---

[4] GINA incorporates by reference Title VII's definition of "employer," which defines the term as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person …." 42 U.S.C. § 2000e(b).

9

examining and treating patients, *id.*, and states affirmatively that "GINA is not intended to limit the collection of family medical history by health care professionals for diagnostic or treatment purposes." *Id.* at n.5.  Had the EEOC truly believed the term "employer" as contemplated by GINA included any private physician who has ever performed an employment-related medical examination, surely it would have noted as much in the regulations.  Tellingly, neither the proposed rulemaking nor the final rule even hints at such an interpretation.

## CONCLUSION

Based on the foregoing, *amici* respectfully request that the Court deny Applicant's Application for Order to Show Cause in this matter.

                Respectfully submitted,

                s/ *Rae T. Vann*
                Rae T. Vann
                *Counsel of Record*
                Pro Hac Vice
                NORRIS, TYSSE, LAMPLEY & LAKIS, LLP
                1501 M Street, NW, Suite 400
                Washington, DC 20005
                rvann@ntll.com
                (202) 629-5600

                Attorneys for *Amicus Curiae*
                Equal Employment Advisory Council and
                Chamber of Commerce of the United States
                of America

OF COUNSEL:

Robin S. Conrad
NATIONAL CHAMBER
   LITIGATION CENTER, INC.
1615 H Street, N.W.
Washington, DC 20062
(202) 463-5337

January 23, 2012

## CERTIFICATE OF SERVICE

I, Rae T. Vann, hereby certify that on January 23, 2011, the Brief *Amici Curiae* of the Equal Employment Advisory Council and Chamber of Commerce of the United States of America in Opposition to Application for Order to Show Cause and in Support of Respondent Nestle Prepared Foods was filed with the Court via CM-ECF, which will send notification to the following counsel of record:

Aimee L. McFerren
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
600 Dr. Martin Luther King, Jr. Place
Suite 268
Louisville, KY 40202


Stephanie E. Lewis
Andreas N. Satterfield, Jr.
JACKSON LEWIS LLP
One Liberty Square
55 Beattie Place, Suite 800
Greenville, SC 29601


s/ *Rae T. Vann*
Rae T. Vann