UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

EQUAL EMPLOYMENT OPPORTUNITY    )
COMMISSION,                     )
                                )   No. 5:11-MC-358-JMH-REW
        Petitioner,             )
                                )   RECOMMENDED DISPOSITION
v.                              )
                                )
NESTLE PREPARED FOODS,          )
                                )
        Respondent.             )

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Petitioner, the Equal Employment Opportunity Commission ("EEOC" or "Commission"), applies to the Court for enforcement of an administrative subpoena against Nestle Prepared Foods. DE #1 (Application). The EEOC issued the subpoena in the course of investigating a charge against Nestle by former employee Michael Peel. *See id.* Nestle filed a response opposing the EEOC's Application. DE #8. The Court conducted a hearing on the matter on December 8, 2011. *See* DE #9. The Court granted the parties' request for post-hearing briefing. *See id.* Briefing is now complete, and the matter is ripe for review. For the reasons set forth below, the Court **RECOMMENDS** that the District Court **GRANT** the EEOC's Application and order enforcement.

As a preliminary matter, the Court considers the motion for leave to file a brief *amici curiae* filed by the Equal Employment Advisory Council ("EEAC") and the Chamber of Commerce of the United States. DE #16. The EEAC and the Chamber seek leave to file a brief that opposes the EEOC's Application and supports Nestle's position. Whether to allow the

1

participation of amici is a matter within the Court's discretion. *See United States v. State of Michigan*, 940 F.2d 143, 165 (6th Cir. 1991). Here, the *amici curiae* brief is somewhat useful, *see id.*, and, significantly, neither party has objected to its inclusion in the record. Accordingly, the Court **GRANTS** the motion (DE #16). The *amici curiae* brief is part of the record, and the Court has considered it in resolving the EEOC's Application for enforcement of Subpoena IN-11-51S.

**I. Background**

The pertinent facts in this case are not in dispute, for purposes of this motion. On June 29, 2010, Michael Peel filed a charge of discrimination against Nestle, alleging disability discrimination, ADA retaliation, and a violation of the Genetic Information Non-Discrimination Act of 2008 ("GINA"). DE #8, Attach. 2; *see* DE #1, Attach. 1, at 2[1]; DE #8 at 2-3. Peel's claim, as relevant, relates to a fitness for duty examination Nestle required to determine Peel's continuing ability to safely perform his duties as a food preparation technician. DE #1, Attach. 1, at 2; DE #8 at 2. Nestle referred Peel to Dr. Paul McLaughlin, a private physician, who performed the exam. DE #1, Attach. 1, at 2; DE #8 at 2. Nestle variously criticizes the GINA claim as non-specific, but as early as in its Petition to Revoke the subpoena, Nestle itself described the GINA allegation as Peel "claim[ing] . . . that the Company acquired genetic information during a fitness for duty evaluation" related to his work at Nestle. DE #1, Attach. 2, at 24 (Exhibit 11, at 1). As pertinent, GINA regulates employer access to and use of defined "genetic information" of employees, a category that includes family medical history. *See* 42

---

[1]Page numbers for attachments correspond to the numbers imposed by the Court's electronic filing system.

U.S.C. §§ 2000ff-1(b), 2000ff(4)(A)(iii).

To rebut Peel's charge of discrimination, Nestle submitted a position statement and supporting documentation. *See* DE #1, Attach. 1, at 2; DE #8 at 3. The EEOC asked Nestle for supplemental information, specifically all medical documents relating to the examination of Peel that were not previously provided, including all medical questionnaires filled out by Peel. DE #8, Attach. 3; *see* DE #1, Attach. 1 at 2; DE #8 at 3. In response, Nestle stated that Dr. McLaughlin was not a Nestle employee, that he did not have a contractual relationship with Nestle, and that Nestle had already produced all medical information related to Peel's exam in its possession, custody, or control. DE #8, Attach. 4; *see* DE #1, Attach. 1 at 2; DE #8 at 3. The EEOC continued to seek the information, and Nestle forwarded the EEOC's request to Dr. McLaughlin. DE #1, Attach. 1 at 2; DE #8 at 3. The EEOC obtained Dr. McLaughlin's complete file for Mr. Peel, which included a family medical history questionnaire. DE #1, Attach. 1, at 3; *see* DE #8 at 4. No evidence indicates that Dr. McLaughlin ever provided the questionnaire to Nestle. *See* DE #8 at 4.

Following receipt of Dr. McLaughlin's file, the EEOC requested further information from Nestle. DE #8, Attach. 5; *see* DE #1, Attach. 1 at 3; DE #8 at 3-4. Specifically, the EEOC asked Nestle to provide, with respect to Nestle's facility in Mount Sterling, Kentucky: (1) the identity of all company physicians, physicians under contract with the company, or physicians to whom the company referred individuals for medical examinations at any time from January 1, 2010, to the present; (2) the identity of each individual who submitted to a medical exam at any time from January 1, 2010, to the present, including name, date of job application, date of hire, date of exam, name of physician who conducted the exam, the reasons not hired (if not hired), and the

reasons for termination (if terminated); and (3) copies of all medical questionnaires completed by the identified individuals who submitted to medical exams, as well as records related to the termination of the identified individuals who were terminated or not hired due to the results of the exam.  DE #8, Attach. 5; *see* DE #1, Attach. 1, at 3; DE #8 at 3-4.  Nestle objected to the request for additional information on the ground that it was beyond the scope of the charge and beyond the scope of the EEOC's enforcement and investigative authority, and on the further ground that it sought information not in Nestle's possession, custody, or control.  DE #8, Attach. 7; *see* DE #1, Attach. 1, at 3; DE #8 at 4.

Ultimately, the EEOC narrowed its request.  On June 30, 2011, it issued the subpoena, Subpoena No. IN-11-51S, that is the subject of this enforcement action.  *See* DE #1, Attach. 1, at 3; DE #8 at 6.  The subpoena directs Nestle to produce:

1. Documents that show the full name, address, and telephone number of each physician to whom Nestle referred individuals for physical or medical examinations (i.e., fitness for duty exams, post-offer exams) for positions at the facility from January 1, 2010, to the present.

2. Documents that show the full name, date of application, if hired, date of hire, if not hired, reason(s) why, and if terminated, reason(s) for termination for each individual who submitted to a physical or medical examination at Nestle's request for positions at the facility from January 1, 2010, to the present, as well as the date of each exam and the name of the physician who conducted the exam.

DE #1, Attach. 2, at 22-23; *see* DE #1, Attach. 1, at 3; DE #8 at 6.  The parties treat the subpoena as limited to the Mount Sterling facility.  Nestle refused to produce the information, instead

submitting a petition to revoke the subpoena. DE #8, Attach. 10; *see* DE #1, Attach. 1, at 3-4; DE #8 at 6. The Commission, by letter, asked Nestle to withdraw its petition to revoke. DE #8, Attach. 11; *see* DE #1, Attach. 1, at 4; DE #8 at 6. Nestle declined to do so, and the EEOC denied the petition. DE #8, Attach. 13; *see* DE #1, Attach. 1, at 4; DE #8 at 6. Thereafter, upon Nestle's continued refusal to comply with the subpoena, the EEOC filed the Application for enforcement currently before the Court. The EEOC properly seeks enforcement under or consistent with the standards of 42 U.S.C. §§ 2000e-5(f)(3), 2000e-8, and 2000e-9.

**II. Analysis**

"An administrative subpoena may be judicially enforced only if it: (1) seeks relevant information; (2) is not unduly burdensome; and (3) is within the statutory authority of the EEOC." *EEOC v. Ford Motor Credit Co.*, 26 F.3d 44, 45 (6th Cir. 1994) (citing *University of Pennsylvania v. EEOC*, 493 U.S. 182, 191, 110 S. Ct. 577, 583 (1990)). Under Sixth Circuit law, "[a] subpoena enforcement proceeding is a summary process designed to decide expeditiously whether a subpoena should be enforced." *EEOC v. Roadway Exp., Inc.*, 750 F.2d 40, 42 (6th Cir. 1984). Generally, "[t]he proceeding is not the proper time to litigate the merits of a claim, either procedurally or substantively." *Id.* Thus, a court "should only examine the substance of the EEOC's underlying claim if the opposing party can show that there is no factual or legal support for the agency's preliminary determination to investigate." *Id.*

Nestle's primary quarrel is with the EEOC's substantive theory in the case. GINA makes it unlawful for an employer to "request" or "require" genetic information "with respect to an employee or a family member of the employee" except in particular circumstances. 42 U.S.C. § 2000ff-1(b). The EEOC contends that Nestle required that Peel undergo the fitness exam, sent

him to its own doctor (McLaughlin) for that limited-purpose screening, and thus is responsible if the doctor improperly queried family medical history.  The record, though far from conclusive, supports a view that Nestle indeed did require the exam, did require use of McLaughlin, and did compensate the doctor and employee for the time spent, which tends to show that the exam occurred as a work function.  *See, e.g.,* DE#1, Attach. 2, at 9 (Exhibit 2, Nestle Response) ("As a result, Charging Party was sent to the Company physician for a job-related medical examination on June 9, 2010 to assess his ability to safely perform the essential functions of his job."); *id.* (referring to McLaughlin as ""the company physician"); *id.* ("it was appropriate for Nestle to "**require that Charging Party undergo an examination with a physician chosen by the Company**") (emphasis added).  Nestle arranged the screening simply by a short fax to the physician's office directing "fit for duty" exam, a "drug & intox." screen, and a return fax of "restrictions/release" to Nestle.  Peel had no relationship with McLaughlin. Under 42 U.S.C. § 2000ff-1(b), it is "an unlawful employment practice for an employer . . . to request, require, or purchase genetic information with respect to an employee[.]" Genetic information includes family medical history.  *See* 42 U.S.C. §§ 2000ff(4)(A)(iii), 2000ff-1(b)(1).  Undeniably, Mr. Peel was asked to give information relating to his family medical history in connection with the fitness for duty examination required by Nestle and performed by McLaughlin.  These facts and § 2000ff-1(b) provide support for the EEOC's decision to further investigate Mr. Peel's charge.

Nestle emphasizes that it never actually received the family medical information provided by Peel to Dr. McLaughlin.  DE #8 at 4.  Nestle further emphasizes the alleged lack of contractual relationship between Nestle and Dr. McLaughlin, arguing that the EEOC is improperly attempting to create a new rule whereby the acts of any private physician during an

6

employment-related medical examination may render the employer liable under GINA.[2] DE #15 at 5. Nestle's complaints go to the ultimate merits of the EEOC's theory, a theory that draws heavily from agency principles. Undoubtedly, the statutory text extends the definition of employer to any person with a sufficient number of employees "and any agent of such person." 42 U.S.C. § 2000ff(2)(B)(i); *see* 42 U.S.C. § 2000e(b). Whether the EEOC could build a factual agency case here is a premature issue. The agency principle exists in the statute. Thus, the theory supporting the GINA charge – that Nestle required an exam, and that its hired, examining agent improperly acquired genetic information – is at least plausible on this record. GINA forecast this very analysis in its proposed rulemaking. Genetic Information Non-Discrimination Act, 74 Fed. Reg. 9056, 9061 (proposed Mar. 2, 2009) (to be codified at 29 C.F.R. pt. 1635) ("GINA would prohibit inquiries about family medical history . . . as part of such an [fitness for duty] exam."); *id.* ("Covered entities should ensure that any . . . medical examinations they require are modified so as to comply with the requirements of GINA."); *id.* ("As we interpret GINA [effective November 2009], . . . [e]mployers will be prohibited from obtaining this type of information through any type of medical examination required of employees for the purpose of determining continuing fitness for duty."); *see also* DE #8, Attach. 9. The regulations effective January 2011 detailed the view through a particular rule, 29 CFR § 1635.8(d).[3]

---

[2]The *amici curiae* brief covers similar territory. The EEAC and the Chamber claim that the Commission "rests its actions on the false premise that private physicians, to whom an employer from time to time may refer applicants and employees for job-related medical examination, are 'employers' for purposes of GINA." DE #16-3 at 4.

[3]The EEOC does not rely on the rule itself, which post-dated the Peel events. Nestle makes much of not applying the rule retroactively. The Court focuses on the statute, simply noting that the specific rule is consistent with the view the EEOC expressed before enactment of the rule. Nestle's strident position that it had no notice of such a view prior to the new rule is

A close merits inspection is improper in the subpoena enforcement context. Nestle may ultimately defeat the EEOC's aggressive stance on GINA, but that fight, over a colorable theory, is for a different day. Regardless of questions about the nature of the relationship between Nestle and Dr. McLaughlin[4] (which the information subpoenaed by the EEOC may shed light on), the law and the facts developed thus far support the EEOC's prerogative to continue its investigation, via the subpoena, under a plausible GINA application.

The Commission denies reliance on § 1635.8(d) as authority for the subpoena. DE #13 at 14. As stated previously, the developed facts and the statute, 42 U.S.C. § 2000ff-1(b), provide sufficient support for Subpoena IN-11-51S. The Court notes, however, that, in spite of Nestle's arguments to the contrary, nothing in the proposed regulations undercuts the EEOC's decision to further investigate Mr. Peel's claim. In fact, the proposed regulations bolster the EEOC's decision. The proposed regulations explained that under the EEOC's interpretation of Title II of GINA, as of the November 21, 2009 effective date, employers were prohibited from obtaining family medical history "through any type of medical examination required of employees for the purpose determining continuing fitness for duty." GINA, 74 Fed. Reg. at 9061; *see* DE #8, Attach. 9, at 7. Significantly, the proposed regulations provided that Title II of GINA would "not

---

inaccurate, given the explicit EEOC interpretation in the proposed rule. Nestle's discussion of a proposal section that obviously dealt with suggested "best practices" in the inadvertent disclosure context is not persuasive or credible.

[4]For instance, is there documentation indicating that McLaughlin required a release of some type to communicate *with Nestle* about restrictions on or fitness for duty concerns regarding Peel? The doctor obviously gave Nestle information; did Nestle have a release for such information, or did McLaughlin simply share it? If the doctor was an information conduit (as opposed to a treating physician under confidentiality limits), this would buttress the view that a requirement (of family medical history) by McLaughlin functionally was a requirement by Nestle itself. The presence or absence of a release would only be a relevant factor.

apply to information obtained by a health care professional in the course of a medical examination, diagnosis, or treatment *unrelated to a determination of fitness for duty*," GINA, 74 Fed. Reg. at 9061 (emphasis added), indicating by implication it would apply to information obtained by a physician during a fitness for duty exam.[5]

Additionally, Nestle argues that the subpoenaed information bears no relevance[6] to Mr. Peel's charge and amounts to an unlawful fishing expedition for the private and confidential medical information of non-charging parties. DE #8 at 15. By statute, the EEOC, in connection with its investigative authority, *see* 42 U.S.C. § 2000e-5, is granted access to evidence "relevant to the charge under investigation." 42 U.S.C. § 2000e-8(a). The Sixth Circuit interprets the relevance standard broadly. *See EEOC v. Cambridge Tile Mfg. Co.*, 590 F.2d 205, 206 (6th Cir. 1979) ("Notions of relevancy at the investigatory stage are very broad[.]"). In *Cambridge Tile*, for example, the court rejected an employer's contention that the EEOC has no power to subpoena information not directly related to the filed charge. *Id.*; *see also EEOC v. Roadway Exp., Inc.*, 750 F.2d at 43 (The "relevancy limitation does not . . . force the EEOC only to review evidence concerning the specific charge."). The court held that "so long as the EEOC is not

---

[5]Further, the inadvertent disclosure provisions highlighted by Nestle (*see* DE #8 at 13) appear to apply to information from employees who request reasonable accommodations for disabilities under the ADA. *See* DE #8, Attach. 9, at 7-8. In any event, while an exception for inadvertent requirement, if applicable, certainly would be relevant, it would not alter the Court's decision to permit further investigation at this early stage. A disclosure within an employer-required exam would fall outside the inadvertance area.

[6]*Amici curiae* focus on relevance to the particular charge and, conclusorily, on the agency theory. For reasons discussed, Nestle was well aware that the charge included a GINA component and that the GINA theory related to inquiry during the fitness exam, as reflected in Nestle's Petition to Revoke. The particular argument then does not square with the factual record here. As to agency, *amici* undervalue the possible agency analysis. The Court assessed the contribution from *amici* but determines that the EEOC is entitled to subpoena enforcement.

wandering into wholly unrelated areas, . . . the Commission has the power to investigate and thus to subpoena documents concerning any employer practice which may shed light on the discrimination charged." *Cambridge Tile*, 590 F.2d at 206.

The *Cambridge Tile* court also reaffirmed the holding in *Blue Bell Boots, Inc. v. EEOC*, 418 F.2d 355 (6th Cir. 1969), explaining that an employer's "pattern of action" is relevant to the EEOC's determination of whether there is reasonable cause to believe that an employer has engaged in discrimination. *Cambridge Tile*, 590 F.2d at 206. Indeed, in *Ford Motor Credit*, the Sixth Circuit agreed with the EEOC's statement that "[c]omparative information . . . is absolutely essential to a determination of discrimination." 26 F.3d at 47. In *Blue Bell*, the Sixth Circuit further stated that "evidence concerning employment practices other than those specifically charged . . . may properly be considered by the Commission in framing a remedy," noting that the EEOC "may, in the public interest, provide relief which goes beyond the limited interests of the charging parties." 418 F.2d at 358 (citations omitted).

Nestle points to *EEOC v. Shell Oil Co.*, 104 S. Ct. 1621 (1984), and to case law from other circuits, implying that the Sixth Circuit relevance standards set forth above are outmoded or dated.[7] DE #8 at 17-19. More recently, however, the Sixth Circuit addressed *Shell Oil*, asserting that although "the Supreme Court's *Shell* opinion indicated that the relevancy standard places some limitation on the scope of the EEOC's investigative authority and that courts should not apply a rubber stamp analysis when assessing relevancy[,] . . . it is simply not the case that *Shell* cast doubt upon the relevancy standard applied in *Blue Bell*." *EEOC v. Roadway Exp., Inc.*, 261

---

[7]Nestle also argues that the facts at issue in cases such as *Blue Bell* and *Cambridge Tile* are readily distinguishable from the facts at issue here. DE #8 at 18-19. Of course, the Court applies the standards cited above to the particular facts of this case.

F.3d 634, 639 (6th Cir. 2001). The Sixth Circuit explained that the *Shell* decision recognized the generous construction of the term "relevant" afforded by courts in cases such as *Blue Bell*, and it "pointed out that Congress implicitly endorsed this generous relevancy standard in 1972 when it decided not to alter the EEOC's statutory authority." *Id.* (citing *Shell Oil*, 104 S. Ct. at 1631). In *Shell* itself, the Court noted that the relevance "limitation on the Commission's investigative authority is not especially constraining." 104 S. Ct. at 1631. *Shell Oil* cited *Blue Bell* approvingly.[8] *See Shell Oil*, 104 S. Ct. at 1631 n. 20.

Here, the subpoenaed information is relevant under Sixth Circuit standards. The EEOC seeks information about other employees at the Mount Sterling facility who have submitted to employment-related medical exams in the last eighteen months between January 2010 and June 30, 2011. In other words, the subpoena seeks information about individuals similarly situated to Mr. Peel, and the time frame is conservative and squares with GINA. The subpoena also seeks information about the physicians who conducted those exams, which could shed light on the nature and dynamics of Nestle's relationship with Dr. McLaughlin and other referral physicians. *See Shell Oil*, 104 S. Ct. at 1631. All the subpoenaed information relates to Nestle's possible local "pattern of action," which may help the EEOC put Mr. Peel's charge in context and

---

[8] The appeal of the UPMC case, relied on extensively by Nestle, recently resulted in a vacated decision. The appellate court specifically noted that the EEOC is entitled to "access any material that *might* cast light on the charge." *EEOC v. UPMC*, 2012 WL 1010856, at *4 (3d Cir. Mar. 27, 2012) (emphasis in original). Further, the Court observed that the EEOC "is not cabined in its investigation by the specific allegations of and evidence supporting a charge if facts that support additional claims . . . are uncovered . . . provided that its investigation of those additional claims is relevant to or might cast light on the underlying charge." *Id.* As to charge specificity, the Court remarked that charge scope is "liberally construed," due to the pro se nature of charge drafting, and that it "is up to the EEOC . . . to investigate whether and under what legal theories discrimination might have occurred." *Id.* at *3 (citation and internal quotation marks omitted).

determine whether there is "reasonable cause" to believe Nestle engaged in an unlawful employment practice. *See Cambridge Tile*, 590 F.2d at 206. In no way is the EEOC "wandering into wholly unrelated areas" relative to the charge, but instead is fairly assessing a "broader picture of discrimination which unfolds in the course of a reasonable investigation of a specific charge." *Id.*

Finally, Nestle's confidentiality concerns are baseless. By statute, the Commission must maintain the confidentiality of information obtained in an investigation. 42 U.S.C. § 2000e-8(e). In short, the subpoena is enforceable.

### III. Conclusion

In sum, and for the reasons stated above:

(1) The Court **GRANTS** the motion for leave to file brief *amici curiae* (DE #16) filed by the Equal Employment Advisory Counsel and Chamber of Commerce of the United States of America.

The Court resolves this non-dispositive pretrial motion under 28 U.S.C. § 636(b)(1)(A). Any party objecting to the Court's decision should consult the statute and Federal Rule of Civil Procedure 72(a) concerning its right of and the mechanics for reconsideration before the District Court. Failure to object waives a party's right to review; and

(2) The Court **RECOMMENDS** that the District Court **GRANT** the EEOC's Application for enforcement of Subpoena IN-11-51S (DE #1).

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. Within fourteen days after being served with a copy of this decision, any party may serve and file

specific written objections to any or all findings or recommendations for determination, de novo, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 106 S. Ct. 466 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 26th day of April, 2012.

Signed By:
*Robert E. Wier*  /s/ REW
**United States Magistrate Judge**