IN THE UNITED STATE DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

EQUAL EMPLOYMENT OPPORTUNITY )
COMMISSION, )
 )
                    Applicant, )
 )
vs. )          C.A. NO.: 5:11-cv-00358-JMH-REW
 )
NESTLÉ PREPARED FOODS )
COMPANY, )
 )
                    Respondent. )
_____

### RESPONDENT'S OBJECTIONS TO RECOMMENDED DISPOSITION

Respondent Nestlé Prepared Foods Company (hereinafter "Nestlé" or "the Company"), pursuant to Federal Rule of Civil Procedure 72(b), respectfully submits its Objections to the Magistrate Judge's Recommended Disposition (Dkt. 17) of Petitioner's Application For Order To Show Cause Why An Administrative Subpoena Should Not Be Enforced  (Dkt. 1 and 2).  For the reasons set forth herein, Nestlé submits that this Court should decline to adopt the Magistrate Judge's recommendation to enforce Petitioner's subpoena and should instead deny enforcement of the subpoena.

## I.      INTRODUCTION

As discussed more fully below, this matter involves a narrow issue of law about the scope of the Equal Employment Opportunity Commission's investigatory authority under the Genetic Information Non-Discrimination Act ("GINA"). The EEOC has concluded in this matter that Nestlé violated GINA when a private physician used a standard, AMA-approved medical intake form which requested family medical history as part of his treatment of one of Nestlé's

employees. It is undisputed that Nestlé never requested or received the genetic information from the private physician. There is also no suggestion that Nestlé took any adverse employment action against the employee as a result of his disclosure of genetic information to his private physician, as Nestlé indisputably never knew about the disclosure of genetic information. Nevertheless, the EEOC takes the position in this action for the first time that the fact that the physician requested this information after the employee was referred to him by the employer somehow violates GINA. The EEOC's Subpoena No. IN-11-51S ("Subpoena") is premised solely on this legal position, which finds no support in the applicable text or regulations of GINA. The EEOC is, solely through litigation of this matter and not through any statutory text or regulations, attempting to create a new rule under GINA whereby the acts of any private physician during an employment-related examination would render an employer automatically liable because the examination was "at the behest" of the employer. (*See, e.g.*, Reply Br. at 3; EEOC Mem. Supp. Application at 5, 7.) Specifically, the EEOC argues that a GINA violation is complete once a doctor with whom a covered entity has referred a patient requests family medical information, regardless of whether the employer instructed the physician to request the information and without limitation to whether the employee chose his or her own physician for the examination. (Reply Br. at 4.) The employer community had no notice of the EEOC's position prior to the events giving rise to this charge. In fact, the EEOC's stated basis for the Subpoena throughout the investigation was predicated exclusively on a procedural regulation which was not even in effect at the time of the events giving rise to the charge of discrimination. The EEOC's Subpoena thus gives rise to grave due process and fundamental fairness concerns. The EEOC simply has no authority to conduct a far-flung investigation in this manner. Notably, the district court in *EEOC v. Loyola Univ. Med. Ctr.*, 2011 U.S. Dist. LEXIS 118286 (N.D. Ill.

Oct. 13, 2011), recently denied the EEOC's application to enforce a subpoena in similar circumstances. A copy of this decision is attached as Exhibit A.  Because the information sought by the Subpoena is not within the agency's authority and is not relevant to any lawful investigation, the EEOC's Application for Enforcement of the Subpoena should be denied.

## II.    FACTUAL BACKGROUND

The following pertinent facts related to the EEOC's pre-Subpoena investigation are undisputed.  On June 29, 2010, Michael Peel, a former Nestlé employee, filed a charge of discrimination. Mr. Peel's claims relate to a fitness for duty evaluation he was given by a private physician, Dr. Paul McLaughlin, on June 8, 2010.  In the charge of discrimination, boxes are checked for GINA and the ADA, but there is no articulation of any GINA violation in the charge.[1]  The charge of discrimination is attached as Exhibit B.  The Company submitted a position statement on October 8, 2010.[2]

On October 20, 2010, twelve days after Nestlé submitted its position statement, the EEOC investigator assigned to the charge, Thomas Feiertag, sent Nestlé a request for supplemental information, requesting the complete file of the private physician who conducted the fitness for duty evaluation.  (Exhibit C.) Nestlé responded by written correspondence to Mr. Feiertag and explained that it had provided the EEOC with all the information in its possession, custody, and control regarding Mr. Peel's employment and fitness for duty evaluation, that the private physician was not a Nestlé employee and was not in any contractual relationship with Nestlé, and that Nestlé did not have access to the physician's records.   (Exhibit D.)

---

[1] The Subpoena purports to seek information under GINA, the ADA, and Title VII.  Mr. Peel, however, did not allege any violation of Title VII. Moreover, the EEOC makes clear in its Application that the Subpoena is premised only on its investigation regarding GINA, and not the ADA. (Application at 3 (noting material at issue was requested to "further investigate the alleged GINA violation and determine its scope and the existence of other victims").)

[2] Nestlé has not attached the position statement and accompanying exhibits in an effort to avoid dissemination of confidential information but will be glad to submit this information to the Court upon request.

3

Nevertheless, the EEOC continued to request the private physician's medical file without explaining the basis for the request, and Nestlé cooperated. The EEOC obtained the private physician's medical file on December 2, 2010.  The private physician's file on Mr. Peel again showed that the private physician did not provide any genetic information to Nestlé and that Mr. Peel does not suffer from any disability.

On January 26, 2011, the EEOC sent another request for additional information requesting the identity of "all company physicians, physicians under contract with the company or physicians to whom the company referred employees for medical examinations" from January 1, 2010 to present, as well as information regarding "each employee" who was administered a medical examination, "copies of all medical questionnaires" for each person, and "records related to termination" for each employee terminated since January 2010. (Exhibit E.) Undersigned counsel promptly spoke to the EEOC investigator (Mr. Feiertag) and inquired about the basis for this request.  (Declaration of Stephanie E. Lewis, attached as Exhibit F.)  Mr. Feiertag said that the request was based on the private medical practice's standard intake questionnaire in the physician file provided to the EEOC, which Nestlé never had in its possession at the time of Mr. Peel's employment.  (Exhibit F at ¶ 2.)  Specifically, Mr. Feiertag pointed to the section in the intake form which requested family medical history.  (*Id.* at ¶ 2.)  It is undisputed that the physician never provided the intake questionnaire to Nestlé.

Other than pointing to this standard intake questionnaire, Mr. Feiertag did not articulate any basis for the requested information.  (*Id.* at ¶ 3.) He did not suggest that he viewed the charge of discrimination as having any merit.  (*Id.* at ¶ 3)  By written correspondence dated February 16, 2011, Nestlé objected to this request for additional information as beyond the scope of the charge, beyond the scope of the agency's enforcement and investigative authority, and as seeking

4

information that is not in Nestlé's possession, custody, or control.  (Exhibit G.)  Nestlé specifically asked the EEOC to share its authority or basis for proceeding as proposed in its January 26 request for information.  Nestlé did not receive any written response to its February 16 correspondence.

Four months later, Mr. Feiertag contacted undersigned counsel by telephone on June 9, 2011 and indicated that although he was not inclined to pursue the matter further, he had received instructions from an unidentified individual to pursue the information as requested in the EEOC's January 26 correspondence.  (Exhibit F at ¶ 4.)  When asked again on what basis the information was being requested, Mr. Feiertag indicated that the EEOC was basing its request for supplemental information on § 1635.8(d) in the final GINA regulations.  (Exhibit F at ¶ 5.)  Section 1635.8(d) states that employers must affirmatively notify healthcare providers not to collect family medical history during an employment-related medical examination. Undersigned counsel for Nestlé immediately explained to Mr. Feiertag that it would be improper for the EEOC to rely on § 1635.8(d) because that regulation was not in effect at the time of the events giving rise to Mr. Peel's charge of discrimination.  (Exhibit F at ¶ 6.)  Mr. Feiertag indicated that he agreed that it would be unfair to base its enforcement actions on a regulation that was not in effect at the time.  (Exhibit F at ¶ 7.)  Nestlé followed up with written correspondence dated June 13, 2011 reiterating that the provision that the EEOC indicated it was relying upon for its expanded request for information was not in effect at the time of the events giving rise to the charge. (Exhibit H.)  Specifically, § 1635.8(d) was issued in November 2010 and became effective January 2011, over 6 months after the events giving rise to Mr. Peel's charge.  The proposed GINA regulations which were in effect in June 2010 specifically state that it was within an employer's discretion to elect whether to notify healthcare providers not to provide

genetic information to the employer. (*See* Proposed Regs. at 9062, attached as Exhibit I.) Nestlé further emphasized again that there is no dispute here that Nestlé <u>never acquired or used genetic information</u>. (Exhibit H.) The EEOC again never responded to Nestlé's arguments or explained any legitimate statutory or regulatory basis for proceeding with its request.

Mr. Feiertag subsequently contacted undersigned counsel by telephone and stated that he had no response to Nestlé's position and that the EEOC simply "wanted" the information and would subpoena it if not provided voluntarily. (Exhibit F at ¶ 8.) Undersigned counsel again asked for some explanation as to the basis for the EEOC's position, and Mr. Feiertag indicated that he was not given a response to Nestlé's argument but simply instructed to get the information. (*Id.* at ¶ 9.)

On July 5, 2011, Nestlé received the instant Subpoena requesting:

1.      Documents that show the full name, address and telephone number of each physician to whom Nestlé referred individuals for physical or medical examinations for positions a the Mt. Sterling facility from January 1, 2010 to present.

2.      Documents that show the full name, date of application, if hired, date of hire, if not hired, reason(s) why, and if terminated, reason(s) for termination for each individual who submitted to a physical or medical examination at Nestlé's request for positions at the Mt. Sterling facility from January 1, 2010 to the present.

On July 12, 2011, Nestlé filed a Petition to Revoke Subpoena. (Exhibit J.) On July 18, 2011, the EEOC Trial Attorney sent a letter requesting that Nestlé "withdraw" the Petition to Revoke. A copy of this correspondence is attached as Exhibit K. Notably, the EEOC stated in this correspondence that the private physician "is the employer" for purposes of GINA. (Exhibit K.) Nestlé responded to this correspondence on July 20, 2011 and respectfully declined to

withdraw the Petition to Revoke, noting that there was no legal authority for the proposition that the private physician "is the employer" under GINA and further noting that such a proposition is directly contrary to the text of GINA and its regulations. A copy of this correspondence is attached as Exhibit L.

On September 26, 2011, the EEOC issued a Determination denying the Petition to Revoke.  (Exhibit M.) Importantly, the EEOC agreed in its Determination that the family medical history taken by Dr. McLaughlin "was not shared with Nestlé."  (Exhibit M at 2 (emphasis added).)  However, the EEOC's Determination states that "[a]ny argument that no violation exists because Nestlé does not have a contractual relationship with Dr. McLaughlin or that he did not pass along the genetic information must fail."  (Exhibit M at 4.) The EEOC states that it has "long been the Commission's position under the ADA that a doctor who works for than employer, or who conducts an exam at an employer's request, is the employer." (Exhibit M at 4 (emphasis added).)

Given that the EEOC concedes that Nestlé never received any family medical history, it defies logic to suggest that Nestlé somehow "discriminated" against Mr. Peel on the basis of this information. Moreover, the suggestion that Mr. Peel was "discriminated" against on the basis of genetic information is nowhere contained in his charge of discrimination.   (Exhibit B.) Nevertheless, the EEOC states repeatedly in its Determination that the Subpoena is necessary to "thoroughly investigate Nestlé's medical exam process and look for other victims of discrimination."  (Exhibit M at 7.)

In its Determination, the EEOC also disavowed its intent to rely on the notice provision of § 1635.8(d) in support of the Subpoena. (Exhibit M at 7.) The EEOC expressly states that "the Commission is not relying on § 1635.8(d) for purposes of this Determination." (Exhibit M at 7.)

Because the Commission's stated rationale for the Subpoena shifted, Nestlé responded to the Determination by written correspondence dated October 14, 2011, noting that Nestlé continued to object to the Subpoena and the additional grounds thereof. A copy of this correspondence is attached as Exhibit N.  In addition to its previously set forth objections, Nestlé noted that it objected to the EEOC's reliance in the Determination on statutory provisions in the ADA and case law under the ADA for the conclusion that a private physician's request for family medical history (without more) subjects the employer to liability under Title II of GINA. Nestlé specifically noted that the ADA provision relied upon by the EEOC in its Determination is nowhere contained in Title II[3] of GINA, the statutory and regulatory provisions of GINA are directly inconsistent with the ADA provision cited, and there is otherwise no legal support for the EEOC's position.

The Magistrate Judge recommended that this Court grant the EEOC's Application.  (Dkt. 17.)  Nestlé respectfully submits that the Magistrate Judge's recommendation is not supported by the record evidence or the law.

### III.   ARGUMENT AND AUTHORITIES

#### A.   The Court is Required to Make a *De Novo* Determination.

Enforcement of an agency subpoena is considered dispositive and thus subject to *de novo* review by a district judge because the matter will return to the agency after a ruling on the enforceability issue.  *See NLRB v. Frazier*, 966 F.2d 812, 817 (3d Cir. 1992) (holding that a district court should review a magistrate judge's decision to quash an agency subpoena *de novo*); *Aluminum Co. of Am. v. EPA*, 663 F.2d 499, 500 (4th Cir. 1981) (ruling that the district court should have reviewed *de novo* a magistrate judge's order regarding a motion to quash an

---

[3] Title II prohibits employment discrimination on the basis of genetic information and is the only Title of GINA even arguably at issue here.

8

administrative search warrant obtained by the EPA); *EEOC v. Schwan's Home Serv.*, 707 F. Supp. 2d 980, 987 (D. Minn. 2010) (explaining that "an application to enforce an administrative subpoena duces tecum, where there is no pending underlying action before the Court, is generally a dispositive matter").

Although a magistrate judge may enter a *recommendation* with respect to a dispositive matter such as the enforcement of an agency subpoena, the district judge retains the ultimate responsibility for the disposition of the case and must therefore independently evaluate the dispositive matter. *See* Fed. R. Civ. P. 72(b); *see also Powell v. United States*, No. 94-5441, 1994 U.S. App. LEXIS 27813 (6th Cir. Sept. 30 1994)[4] ("Failure to give the report and recommendation a de novo review has not been subject to a harmless-error analysis by the Sixth Circuit; it is constitutionally and jurisdictionally mandated under Article III of the Constitution."); *Flournoy v. Marshall*, 842 F.2d 875, 876 (6th Cir. 1988) (emphasizing to district courts the importance of reviewing *de novo* recommendations of dispositive motions by magistrate judges because such review is required not only by the Federal Magistrates Act, but by the Constitution itself).

Thus, a "de novo determination requires 'fresh consideration [of] those issues to which specific objection has been made by a party.'" *Victoria's Secret Stores v. Artco Equip. Co.*, 194 F. Supp. 2d 704, 716 (S.D. Ohio 2002) (quoting *U.S. v. Raddatz*, 447 U.S. 667, 675 (1980)). In conducting an independent review, a district judge may accept, reject, or modify the findings or recommendations, or recommit the matter to the magistrate judge with instructions. *See* Fed. R. Civ. P. 72(b).

**B.     Standard for Enforcement**

---

[4] A copy of this decision is attached hereto as Exhibit P.

To successfully petition this Court to enforce the Subpoena, the EEOC must establish that (1) the subpoena is within the EEOC's authority, (2) the demand for information is not too indefinite, and (3) the material requested is relevant to the charge being investigated. *Univ. of Pa. v. EEOC*, 493 U.S. 182, 191 (U.S. 1990). While this type of proceeding is generally not the proper time to litigate the merits of a claim, the Sixth Circuit has held that a district court should examine the substance of the EEOC's underlying claim if the opposing party can show that there is no factual or legal support for the EEOC's determination to investigate. *EEOC v. Roadway Express, Inc.*, 750 F.2d 40, 42 (6th Cir. 1984).

**C.    The Subpoena is Not Within the Scope of Any Lawful Investigatory Authority.**

**1.    The Magistrate Judge Incorrectly Declined to Resolve the Foundational Issue of Whether Nestlé Can Be Deemed Liable under GINA for the Actions of Dr. McLaughlin, a Private Healthcare Provider.**

The Supreme Court has held that any subpoena issued by the EEOC must be within the scope of the EEOC's authority. *Univ. of Pa.*, 493 U.S. at 191. Thus, it is this Court's responsibility to ensure that the EEOC does not exceed the scope of its authority by investigating activities that do not violate the laws that the EEOC enforces. To the extent that a subpoena is outside of the EEOC's scope of authority, the subpoena is invalid.

Here, the Magistrate Judge appeared to accept that the sole basis upon which the EEOC could even plausibly proceed with its Subpoena would be if Dr. McLaughlin were an "agent" of Nestlé. However, the Magistrate Judge then declined to resolve that predicate issue stating, "whether the EEOC could build a factual agency case here is a premature issue." (Recommended Disposition ("Rec.") at 7.) He further states that "[a] close merits inspection is improper in the subpoena enforcement context." (*Id.* at 8.) These statements and the Magistrate Judge's ultimate decision are untenable and would render the Court's role in policing the scope

of the EEOC's authority to issue subpoenas meaningless. The Sixth Circuit has expressly held that if a respondent can show that there is no factual or legal support for the EEOC's determination to investigate, then it is appropriate for this Court to examine the substance of the underlying charge of discrimination in the subpoena enforcement context. *Roadway Express, Inc.*, 750 F.2d at 42.

Similarly, numerous courts have conducted a detailed examination of the validity of a charge in the subpoena enforcement context, concluding that in order for a charge to trigger the EEOC's investigatory powers it must complain of an alleged employment practice that could be the subject of a subsequent lawsuit by the charging party. *See, e.g., EEOC v. Ocean City Police Dep't*, 820 F.2d 1378 (4th Cir. 1987) (*en banc*), *vacated on other grounds*, 486 U.S. 1019 (1988); *EEOC v. Group Health Plan*, 212 F. Supp. 2d 1094 (E.D. Mo. 2002); *EEOC v. Quick Shop Mkts., Inc.*, 396 F. Supp. 133 (E.D. Mo. 1975), *aff'd*, 526 F.2d 802 (8th Cir. 1975). Addressing this issue in *Ocean City Police*, the Fourth Circuit explained:

> Ordinary logic indicates that it is beyond the authority of EEOC to investigate charges which cannot be pursued. EEOC is not powered to conduct general fact-finding missions concerning the affairs of nation's work force and employers. The only legitimate purpose for an EEOC investigation is to prepare for action against an employer charged with employment discrimination, or to drop the matter entirely if the Commission finds the charge to be unfounded. But if no action can be taken on the charge, there is no justification for an investigation absorbing the resources of both the employer and the Commission. It would be anomalous to hold that a charge that was invalid to support an action was nevertheless valid to support investigation, the sole purpose of which is preparation for the action.

820 F.2d 1380.

In *Group Health Plan*, for example, the court denied enforcement of an EEOC subpoena that was based on a charge alleging employment practices that were not actionable under the

11

ADA.   212 F. Supp. 2d at 1100.   The court analyzed the allegations asserted in the charge underlying the investigation, analyzed the ADA in detail, and found that the charging party could not bring an ADA lawsuit based on the allegations because the alleged employment actions were not covered by the statute.   *Id.* at 1097-1100.   Noting that the EEOC's "authority under the ADA extends only to investigate Charges alleging employment practices covered by the ADA," the court denied enforcement of the subpoena because "the EEOC's investigation [was] not for a legitimate purpose authorize[d] by Congress."   *Id.* at 1100.

Here, the EEOC has already concluded that Nestlé has violated GINA as a result of Dr. McLaughlin's actions, and the Subpoena's sole purpose is to find for other "class members." (Tr. at 7-8.)   Thus, the issue is ripe for review.   Accordingly, the soundness of the EEOC's position that an agency relationship was created based on the facts of this case that would make Nestlé liable for Dr. McLaughlin's actions should be fully considered by this Court in evaluating the enforceability of the Subpoena.   Moreover, as set forth below and in Nestlé's briefing and exhibits to the Magistrate Judge, all of the record evidence and case law demonstrates conclusively that Dr. McLaughlin could not be considered an agent of Nestlé.

   **2.**     **The Magistrate Judge Incorrectly Concluded that it was Plausible that Nestlé Could Be Liable Under GINA for the Actions of a Private Physician with No Contractual Relationship with Nestlé.**

Instead of making a determination about the nature of the relationship between Dr. McLaughlin and Nestlé, the Magistrate Judge stated that it is "at least plausible" that the EEOC could prove that Dr. McLaughlin was Nestlé's agent.   (Rec. at 7.)   This position ignores the clear weight of both the facts of this particular case and the applicable provisions of GINA.   There is no agency relationship between Dr. McLaughlin and Nestlé; nor any type of relationship that would make Nestlé liable for Dr. McLaughlin's actions, which renders the Subpoena

12

unenforceable due to the EEOC's lack of statutory authority. Indeed, the EEOC conceded as much at the oral argument of this matter:

> Q. Okay, and he is an agent why? Tell me how he becomes an agent.
>
> A. Well, at this point we have not interviewed him. We know very little about him in particular or any of the other relationships they may have with the physicians to whom they refer employees for work-related exams. But it's certainly possible that because the employee had no say over whether or not that was the doctor he was going to be sent to, it wasn't the employee's own treating physician, the employee did not pay for the exam, because of those types of facts, that there was some sort of relationship, if not contractual, then through agency or some other way that employees were being referred to these physicians for work-related exams.

(Tr. at 6.)

Notably, the Subpoena does not request <u>any</u> information about the nature of the relationship between Dr. McLaughlin and Nestlé. Thus, the Magistrate Judge's suggestion that the EEOC is entitled to enforce the Subpoena to obtain additional information about this issue fails to take into account the contents of the Subpoena itself. The EEOC has made clear that the Subpoena is simply to uncover other "victims" of unlawful discrimination, with the ongoing incorrect assumption that a private physician is the "employer" for the purposes of GINA.   (Tr. at 7-8.)

Furthermore, all of the statements and briefing submitted to the Magistrate Judge demonstrates conclusively that there is no plausible basis to deem Dr. McLaughlin to be an agent of Nestlé. Dr. McLaughlin submitted a Declaration (attached to Nestlé's Sur-Reply at Exhibit C) and stated under oath that he viewed Mr. Peel as his patient upon seeing him in connection with the fitness for duty examination, (McLaughlin Decl. at ¶ 8), that the standard intake form that he used with Mr. Peel is an AMA-approved form, (McLaughlin Decl. at ¶ 9), he considers the information he requested necessary to his practice of medicine, (McLaughlin Decl. at ¶ 9), that

he is not in any contractual relationship with Nestlé, (McLaughlin Decl. at ¶ 4), and Nestlé does

not control his practice of medicine in any respect, (McLaughlin Decl. at ¶ 7).  Accordingly, the

entire factual predicate for the EEOC's argument in its Reply Brief that Dr. McLaughlin was an

agent of Nestlé is unsound.

> **3.     The Magistrate Judge Erred in Finding that the EEOC's Position Here
>        Violates Due Process and Principles of Estoppel.**

The notion that an employer is automatically liable for the acts of a private healthcare

provider under GINA is wholly inconsistent with the text of GINA and the proposed GINA

regulations that existed in June 2010. For the EEOC to take a position in this Subpoena action

that is inconsistent with the law in effect at the time of the conduct underlying the Charge is

fundamentally unfair and violates basic principles of due process and estoppel.

> **a.     The EEOC's Initial Policies and Guidance regarding Employer
>        Notification to Healthcare Providers Under GINA.**

As noted above, the EEOC initially stated that the sole basis for its subpoena is §

1635.8(d) in the final GINA regulations. Notably, that provision was not included in the

proposed regulations which were in effect in June 2010, which is the timeframe relevant to Mr.

Peel's claims. At that time, the proposed GINA regulations specifically <u>did not require</u> that an

employer provide notification to a healthcare provider not to ask for family medical history. In

fact, the proposed regulations specifically stated that such a notification was not required and

would be within the discretion of the employer. The pertinent portion of the proposed regulations

state:

> In addition to complying with relevant EEOC guidance, covered entities <u>may
> wish to take proactive measures to avoid even the inadvertent acquisition of
> genetic information</u>. For example, as a best practice, an employer that asks an
> employee to have a health care professional provide documentation about a
> disability in support of a request for accommodation <u>could </u>specifically indicate on

a questionnaire provided for this purpose that family medical history or other genetic information about the employee <u>should not be provided</u>.

In addition, in responses by the DOL to questions by private employers in May 2010, the DOL made clear that nothing in GINA prevents a health care professional who is providing health care services from asking an individual about family medical history. http://www.abanet.org/jceb/2010/2010DOLQA.pdf (Question 12 in Questions and Proposed Answers for the Department of Labor Staff for the 2010 Joint Committee of Employee Benefits Technical Session Held on May 5, 2010).

> **b.** **The EEOC's Change of Policy in the Final GINA Regulations.**

The final GINA regulations were issued in November 2010 and expressly state that they are not effective until January 2011. This was the first reference to any notification requirement. There is nothing in the statute or any prior published guidance that would have put an employer on notice in June 2010 that it was required to inform private healthcare providers not to ask for family medical history.

> **c.** **Estoppel and/or Due Process Concerns Bar the Issuance of the Subpoena.**

The EEOC does not have the authority to apply its regulations retroactively. Numerous courts have held that retroactive application would violate due process and basic principles of fairness. *See, e.g., United States v. AMC Entm't, Inc.*, 549 F.3d 760, 768-70 (9th Cir. 2008) (refusing to apply interpretation of EEOC regulation to defendant retroactively, in part, because "[t]hose regulated by an administrative agency are entitled to know the rules by which the game will be played" (citation and quotation signals omitted)); *see also Yukon-Kushokwim Health Corp., Inc. v. Trust Ins. Plan for Sw. Alaska*, 884 F. Supp. 1360, 1368 (D. Alaska 1994) (refusing retroactive application of the ADA because to do so would impose additional, unforeseeable

obligations on private employers); *Raya v. Maryatt Indus.*, 829 F. Supp. 1169, 1174 (N.D. Cal. 1993) (rejecting retroactive application of the ADA, in part, because it imposes new and unanticipated obligations that "rais[e] due process concerns").

In addition to the due process concerns associated with retroactive application of § 1635.8(d), the EEOC is estopped from taking a position in this action contrary to its published guidance in effect in June 2010. The Supreme Court has commented, "when the government acts in misleading ways, it may not enforce the law if to do so would harm a private party as a result of government deception." *Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51, 60 n. 12 (1984), *citing United States v. Pennsylvania Industrial Chemical Corp.*, 411 U.S. 655, 670, 670-675 (1973); *Moser v. United States*, 341 U.S. 41 (1951). The Supreme Court has also held:

> Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced to the position formerly taken by him.

*State of New Hampshire v. State of Maine*, 532 U.S. 742, 749 (2001).[5]

The doctrine of judicial estoppel has been applied to prevent a party that has taken one position in litigation from later reversing its position where it is to that party's advantage to do so. *Levinson v. United States*, 969 F.2d 260, 264 (7th Cir. 1992). Judicial estoppel applies with equal force when a party seeks to repudiate statements made in an administrative proceeding, rather than a judicial proceeding. *Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1417 (7th Cir. 1993).

---

[5] Unlike equitable estoppel, judicial estoppel applies against the government in the absence of affirmative misconduct. *Ismie Mutual Insurance Co. v. United States Department of Health and Human Services*, 413 F. Supp. 2d 954, 959 (N.D. Ill. 2006).

The elements of estoppel apply to bar the issuance of the Subpoena here. The EEOC continues to take positions that are inconsistent and seeks to assert in briefing rules that are not contained in any published statute or regulation. Indeed, the EEOC stated during oral argument that the agency itself still remains unclear about the parameters of the rule that it is attempting to enforce here. Specifically, the Court questioned the EEOC regarding whether it would continue to assert that a GINA violation would occur if an employee visited his own private physician for a fitness for duty examination. (Tr. at 36-39.) Obviously, an employee's own physician would have family medical history in the medical file of the patient when conducting a fitness for duty examination. The EEOC responded to the Court's questioning by stating that it was "not prepared to answer that," noting that "[i]t's a very good question," and indicating that perhaps there would not be a violation but that it was not clear. (Tr. at 39.) The Magistrate Judge correctly questioned how an employer could possibly determine its responsibilities under GINA when the EEOC did not appear to itself have a clear position on the limits of the new rule upon which it is attempting to rely here. (Tr. at 39.)

Finally, the Magistrate Judge's conclusion that the EEOC is not relying on retroactive application of §1635.8(d) to enforce this Subpoena is belied by the EEOC's numerous statements on the record to the contrary. For example, at page 7 of the oral argument transcript, counsel for the EEOC explained, "[i]f that is their practice, referring employees to physicians for these types of exams **without giving any sort of guidance or notice to the physician that they are not supposed to collect this type of information** . . . that is why I want to explore that." (Tr. at 7-8 (emphasis added).) When the Court expressed concern regarding how employers would be able to figure out how to avoid liability given the EEOC's agency arguments, counsel for the EEOC again stated, "I think **you can look at what the final reg says**, and it says that when an employer

directs a health care professional to perform an employment-related exam, **that they need to make sure they tell that employer not to request family medical history**. . . ." (Tr. at 39 (emphasis added).)  Counsel for the EEOC later said, "Well, the physician was not given the warning, **the notice that he was supposed to have been given from Nestle**, so any liability would flow to Nestle. . . ."  (Tr. at 40 (emphasis added).)

These arguments make clear that the EEOC's Subpoena is in fact premised on retroactive application of § 1635.8(d).  As set forth above, and as also explained in the Brief *Amici Curiae* Of The Equal Employment Advisory Council And Chamber Of Commerce Of The United States, retroactive application of this regulation raises serious due process concerns. Even if the EEOC is not intending to harass and overwhelm an employer facing an uncertain economy, the EEOC has "deliberately chang[ed] positions" and the Subpoena should not be enforced to protect the integrity of the administrative process.  *See New Hampshire*, 532 U.S. at 749.

**D.    The Information Sought in the Subpoena Bears No Relevance to  Mr. Peel's Charge and Amounts to an Unlawful Fishing Expedition.**

The EEOC's power of investigation is anchored to the specific charge being investigated, and the EEOC is entitled to examine only evidence relevant to "the charge under investigation." *EEOC v. Shell Oil Co.*, 466 U.S. 54, 68-69 (1984); *see also Univ. of Pa.*, 493 U.S. at 191 (holding that one of the requirements to successfully petition a court to enforce a subpoena is a showing that the material requested is relevant to the charge being investigated).   "The Commission is not empowered to conduct general fact-finding missions concerning the affairs of the nation's work force and employers. The only legitimate purpose for an EEOC investigation is to prepare for action against an employer charged with employment discrimination, or to drop the matter entirely if the  . . . charge . . . [is] unfounded."  The Supreme Court has cautioned courts not to allow the relevance rule to be construed so loosely as to allow the rule to become a

"nullity." *Shell Oil Co.*, 466 U.S. at 69.  Furthermore, the Sixth Circuit and other courts have recognized that the rule must be construed to prevent the EEOC from engaging in "fishing expeditions." *EEOC v. United Air Lines, Inc.*, 287 F.3d 643, 653 (7th Cir. 2002) (citing *EEOC v. K-Mart Corp.*, 694 F.2d 1055, 1066 (6th Cir. 1982)) (explaining that courts serve to control the EEOC's authority and prevent "fishing expeditions").

The Magistrate Judge does not properly heed the Sixth Circuit's warning that the EEOC should not be permitted to engage in "fishing expeditions," and does not properly follow the Supreme Court's instruction that courts should not allow the relevance rule to be construed so loosely as to allow the rule to become a "nullity." *See K-Mart Corp.*, 694 F.2d at 1066; *Shell Oil Co.*, 466 U.S. at 69.  Instead, the Magistrate Judge relies on statements by the Sixth Circuit in cases with facts that bear no resemblance to the facts here to conclude that the information sought in the Subpoena is relevant to Mr. Peel's Charge.

As an initial matter, the Magistrate Judge misstates the clear purpose of the Subpoena. According to the Magistrate Judge, the Subpoena will help the EEOC "determine whether there is 'reasonable cause' to believe Nestlé engaged in an unlawful employment practice."  (Rec. at 12.)  The EEOC, however, was clear during oral argument that it has already determined that Nestlé violated GINA based on the acquisition of genetic information by Dr. McLaughlin and that the purpose of the Subpoena is to find other "class members":

> The Court:  And how would – how would looking for other instances involving this doctor or other doctors at this facility, how would discovering more about those things be relevant to Mr. Peel's charge?
>
> Counsel for EEOC:  **Mr. Peel's charge, we feel that there is a violation of the statute in regards to him.  And then flowing from there, looking for other class members**, there are other instances in this circuit in particular where courts have enforced administrative subpoenas looking for systemic type information even though there is not a systemic underlying charge.

The Court:  Okay, **so is that really the only theory you are going on, that we have discovered a violation as to Mr. Peel and so we should be entitled to reasonably explore whether there are other victims of the same type of violation at that plant?**

Counsel for EEOC:   **Correct**, if that is their practice, referring employees to physicians for these types of exams without giving any sort of guidance or notice to the physicians that they are not supposed to collect this type of information, it certainly is possible that if it was done towards one employee from one physician that it could be done towards other employees as well; so yes, that is why I want to explore that.

(Tr. at 7-8 (emphasis added).)

Furthermore, despite its stated goal of seeking additional "class members," the EEOC declared at oral argument that there is no evidence whatsoever of a class-wide issue at Nestlé:

The Court:  **And what would suggest that there is a systemic issue at Nestlé?**

Counsel for EEOC:  **At this point we don't know.**  We won't know that until we have the information, and then we can determine whether or not that's the case.

(Tr. at 8 (emphasis added).)

It is well established that in assessing the relevance of the information requested by a subpoena, the court must first examine the charge itself.  *United Air Lines*, 287 F.3d at 654 (citing *Shell Oil Co.*, 466 U.S. at 69).  Consistent with the EEOC's admission that there is no evidence of a class-wide issue, Mr. Peel's charge does not even remotely suggest a systemic problem.  Indeed, Mr. Peel's charge contains no allegation of a substantive GINA violation. (Exhibit B.)  While the box for "genetic information" is checked, the particulars of the Charge contain no allegation of a violation of GINA.  (Exhibit B.)  Moreover, the charge is limited temporally to June 2010.  Thus, there is no basis to use Mr. Peel's charge as a springboard for a systemic investigation into potential victims of genetic information discrimination where the charge itself contains no such substantive allegation.  In spite of these facts, the Subpoena, which

20

is predicated *only* on the EEOC's intent to investigate "other potential victims of discrimination" under GINA, requests *facility-wide* information for *all* job positions for a time period of over 2 years, and information about hiring and termination for *all employees* who submitted to a physical or medical examination at Nestlé's request.

Courts have steadfastly refused to enforce subpoenas that attempt to explore class-wide issues where no evidence of a systemic issue exists. The recent holding in *EEOC v. Burlington Northern Santa Fe Railroad*, 669 F.3d 1154 (10th Cir. 2012) is particularly instructive in the instant case. In that case, the EEOC received and investigated two charges of disability discrimination, both of which alleged a failure to hire in violation of the ADA following the same medical screening procedure used by the employer. *Id.* at 1155. In investigating these two charges, the EEOC informed the employer that it was broadening its investigation to include "pattern and practice discrimination" and then issued a subpoena for company-wide information. *Id.* at 1156. The district court denied the EEOC's application to enforce the subpoena, concluding that "wide deference to the scope of [EEOC] subpoenas . . . does not transcend the gap between the pattern and practice investigation and the private claims that have been shown here." *Id.* at 1158. The Tenth Circuit agreed and affirmed. *Id.* at 1155. The Tenth Circuit explained that the "EEOC is entitled only to evidence that is 'relevant to the charge[s] under investigation.'" *Id.* at 1157. According to the court, two individual charges alleging the same type of discrimination did not justify the pattern and practice investigation of the EEOC:

> Any act of discrimination *could* be part of a pattern or practice of discrimination, but not every charge of discrimination warrants a pattern or practice investigation. As the Supreme Court explained in Shell Oil Co., we should not construe relevance so broadly as to render its requirement a nullity.

*Id.* at 1157-58 (emphasis in original).

Also instructive is the recent holding in *EEOC v. Loyola Univ. Med. Ctr.*, 2011 U.S. Dist. LEXIS 118286 (N.D. Ill. Oct. 13, 2011).   In *Loyola*, the EEOC received and investigated a charge alleging that an individual was subjected to a medical examination in violation of the ADA.  *Id.* at *8-*9.  During its investigation, the EEOC subpoenaed information pertaining to other individuals required by the respondent to submit to a "fitness for duty exam" from January 2008 to the present.  *Id.* at *3-*4.  The court denied the EEOC's application to enforce the subpoena, explaining that the information sought was not relevant to the underlying charge and, even under a "broader theory" that EEOC investigations are not limited to the specific charge of any complainant, was "not sufficiently tailored to the particular circumstances of the investigation." *Id.* at *9.

Likewise, in the *United Air Lines* case, the Seventh Circuit found that the EEOC's subpoena was not relevant because it was not limited to individuals who were similarly situated, *i.e.*, in the same position as Mr. Peel.  287 F.3d at 654.  As in the *United Air Lines* case – where the EEOC sought to obtain information of each United employee "who has taken a medical leave of absence," – the EEOC is attempting to investigatively troll through Nestlé's hiring and termination decisions with respect to its entire workforce at the Mount Sterling facility.  *See id.* The Subpoena thus violates the *United Air Lines* ruling because "nothing in the charge suggests systemic discrimination." *Id.* at 655; *see also EEOC v. Packard Elec. Div., GMC*, 569 F.2d 315, 317 (5th Cir. 1978) (affirming district court's decision to deny enforcement of an EEOC subpoena seeking facility-wide information when the pending charges consisted of individual instances of race and gender discrimination); *EEOC v. Randstad*, 765 F. Supp. 2d 734, 741-42 (D. Md. 2011) (holding that information for all employee placements over five-year period was not relevant to the individual charge of discrimination being investigated).

The Sixth Circuit cases relied on by the Magistrate Judge are all readily distinguishable from the instant case. In *EEOC v. Roadway Express, Inc.*, 261 F.3d 634, 638-39 (6th Cir. 2001), the court concluded that given the "systemic nature" of the allegations, evidence that the respondent discriminated in other situations would cast light on whether the practices complained of were motivated by unlawful discrimination. Similarly, in *Blue Bell Boots, Inc. v. EEOC*, 418 F.2d 355, 356, 358 (6th Cir. 1969), the EEOC was investigating multiple charges of a systemic nature alleging that the employer restricted employment opportunities for minorities and maintained a discriminatory promotion program, and the court concluded that "the existence of patterns of racial discrimination in job classifications or hiring situations other than those of the complainants may well justify an inference that the practices complained of here were motivated by racial factors." Likewise, in *EEOC v. Cambridge Tile Mfg. Co.*, 590 F.2d 205, 206 (6th Cir. 1979), the EEOC was investigating multiple charges of race and sex discrimination, had uncovered evidence of broader discrimination in the course of its investigation prior to issuing the subpoena, and the court, relying on *Blue Bell Boots*, concluded that whether the employer was discriminating against other minorities may shed light on whether the employer was motivated by race or sex in its treatment of the charging parties. Finally, in *EEOC v. Roadway Express, Inc.*, 750 F.2d 40, 41 (6th Cir. 1984), the EEOC was again investigating multiple charges of race discrimination. Furthermore, the prior decision of the district court in the case reveals that the subpoenaed information at issue pertained to the treatment of employees similarly situated to the charging parties, which was relevant in determining whether the charging parties were treated less favorably. *EEOC v. Roadway Express, Inc.*, 580 F. Supp. 1063, 1067 (W.D. Tenn. 1984).

23

The allegations made by Mr. Peel and the information sought by the EEOC in the instant case bear no resemblance to any of the above cases relied on by the Magistrate Judge.  Unlike those cases, it cannot reasonably be argued here that the information sought in the Subpoena arises from Mr. Peel's charge or will shed light on Mr. Peel's charge.  In those cases, there were multiple similar charges being investigated and/or allegations of systemic discrimination made in the charges that supported a subpoena aimed at uncovering systemic discrimination.  Furthermore, in those cases, the subpoena was also shedding light on the charges at issue to determine whether discrimination had occurred because the motives of the employers were at issue.  Here, in stark contrast to the cases relied on by the Magistrate Judge, Mr. Peel's charge fails to articulate a GINA violation let alone an allegation of systemic GINA discrimination, the EEOC has declared that it has already determined that Nestlé violated GINA with respect to Mr. Peel, the motive of Nestlé is not at issue, and the Subpoena is aimed only at uncovering other "class members" based on the EEOC's unsupported conclusion that Nestlé violated GINA by sending employees to private physicians.  (Tr. at 7-8.)  Furthermore, the EEOC has conceded that it has no evidence of systemic discrimination on which to base the Subpoena.  (Tr. at 8.)  In sum, the Subpoena is a textbook example of a fishing expedition that the Sixth Circuit and other courts have warned against.

## CONCLUSION

For the reasons set forth above, and in its earlier briefing, Nestlé respectfully submits that the Court should decline to adopt the Magistrate Judge's recommendation to enforce the EEOC's subpoena and should instead deny enforcement of the subpoena.

Respectfully submitted this 11th day of May, 2012.

s/Stephanie E. Lewis
Stephanie E. Lewis (Pro Hac Vice)

24

lewiss@jacksonlewis.com
Andreas N. Satterfield, Jr. (Pro Hac Vice)
satterfielda@jacksonlewis.com

JACKSON LEWIS LLP
One Liberty Square
55 Beattie Place, Suite 800
Greenville, SC  29601

ATTORNEYS FOR RESPONDENT

25

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that on May 11, 2012, the foregoing Respondent's Objections to Recommended Disposition was filed through the ECF system, which will send a notice of electronic filing to:

> Aimee L. McFerren
> Equal Employment Opportunity Commission
> 600 Dr. Martin Luther King Jr. Place, Suite 268
> Louisville, KY 40202

> s/Stephanie E. Lewis
> Stephanie E. Lewis (Pro Hac Vice)
> lewiss@jacksonlewis.com
> Andreas N. Satterfield, Jr. (Pro Hac Vice)
> satterfielda@jacksonlewis.com
>
> JACKSON LEWIS LLP
> One Liberty Square
> 55 Beattie Place, Suite 800
> Greenville, SC  29601