IN THE UNITED STATE DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, )<br>)<br>Applicant, )<br>)<br>vs. )<br>)<br>NESTLÉ PREPARED FOODS COMPANY, )<br>)<br>Respondent. ) | C.A. NO.: 5:11-cv-00358-JMH-REW |

**RESPONSE IN OPPOSITION TO EEOC'S MOTION FOR RECONSIDERATION**

Pursuant to Rule 7.1(c) of the Local Rules for the Eastern District of Kentucky, Respondent Nestlé Prepared Foods Company (hereinafter "Nestlé" or "the Company") respectfully submits this Response in Opposition to the EEOC's Motion for Reconsideration (Dkt. 20) of this Court's Order denying enforcement of Subpoena No. IN-11-51s (Dkt. 19). As set forth more fully below, there is no basis for reconsideration of the Court's carefully-considered decision to deny enforcement of the Subpoena.

**I.   ARGUMENT AND AUTHORITIES**

**A.   The High Reconsideration Standard[1]**

"Motions for reconsideration are extraordinary in nature and, because they run contrary to notions of finality and repose, should be discouraged." *United States v. Demjanjuk*, No. 1:99 CV 1193, 2012 U.S. Dist. LEXIS 6757, at *3 (N.D. Ohio Jan. 20, 2012) (internal quotations

---

[1] In articulating the standard for granting a motion for reconsideration in its Memorandum of Law in Support of its Motion for Reconsideration (hereinafter "Memo"), the EEOC cites cases from other circuits, which apply a different standard than courts in the Sixth Circuit. (*See* Memo at 3-4.)

omitted).[2]  As such, motions for reconsideration are "granted very sparingly."  *Id.*; *see also Roll v. Bowling Green Metalforming, LLC*, No. 1:09-CV-00081-TBR, 2010 U.S. Dist. LEXIS 88262, at *2 (W.D. Ky. Aug. 25, 2010) ("[R]econsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly.").  Indeed, the Sixth Circuit has strictly limited the grounds on which a motion for reconsideration can be granted, holding that reconsideration is proper only if there is a clear error of law, newly discovered evidence or an intervening change in controlling law, or to prevent manifest injustice.  *Gencorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999) (emphasis added).

Given the extremely limited circumstances in which reconsideration is proper, courts have noted several situations where reconsideration is improper.  "A party cannot utilize a Rule 59(e) motion to re-litigate issues the Court previously considered."  *Carter v. Porter*, No. 5:08-CV-246-REW, 2012 U.S. Dist. LEXIS 12185, at *4 (E.D. Ky. Feb. 1, 2012); *see also Williams v. Mitchell*, No. 1:09 CV 2246, 2011 U.S. Dist. LEXIS 124736, at *4 (N.D. Ohio Oct. 27, 2011) (explaining that it is improper to use a motion for reconsideration "to ask the Court to rethink what the Court ha[s] already thought through—rightly or wrongly"); *Roll*, 2010 U.S. Dist. LEXIS 88262, at *2 ("A Rule 59(e) motion does not provide plaintiffs another opportunity to argue the merits of their case.").  "Additionally, a party wishing to alter or amend a judgment may not 'raise arguments which could, and should, have been made before judgment issued.'"  *Id.* (quoting *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998)).  "For reasons of policy, courts and litigants cannot be repeatedly called upon to backtrack through the paths of litigation which are often laced with close questions.  Decisions, once made in full consideration of complete records during the course of litigation, deserve the

---

[2]  Copies of unpublished cases cited herein are attached as <u>Exhibit A</u>, and appear in <u>Exhibit A</u> in the order in which they appear in this brief.

badge of dependability necessary to advance the case to the next stage." *Kuenz v. Goodyear Tire & Rubber Co.*, 617 F. Supp. 11, 14 (N.D. Ohio 1985).

Here, rather than presenting proper grounds for reconsideration, the EEOC attempts to merely re-litigate matters that were before the Court and were properly considered. The EEOC has not pointed to any clear error of law, newly-discovered evidence, or manifest injustice. In fact, the principal cases relied on by the EEOC in seeking reconsideration, *EEOC v. Shell Oil*, 466 U.S. 54 (1984), *EEOC v. Ford Motor Credit Co.*, 26 F.3d 44 (6th Cir. 1994), *EEOC v. Konica Minolta Business Solutions*, 639 F.3d 367 (7th Cir. 2011), *Blue Bell Boots, Inc. v. EEOC*, 418 F.2d 355 (6th Cir. 1969), were relied on by the EEOC in its prior briefing. (*See* Dkt. 1, 13) This Court explicitly analyzed *Ford Motor Credit*, *Shell Oil*, and *Blue Bell Boots* in its Order. (Dkt. 19 at 5-6.) It is well established that a motion for reconsideration does not provide a party this type of an opportunity to re-argue the merits of its case. *Carter*, 2012 U.S. Dist. LEXIS 12185, at *4; *Williams*, 2011 U.S. Dist. LEXIS 124736, at *4; *Roll*, 2010 U.S. Dist. LEXIS 88262, at *2. Thus, the EEOC's motion should be denied for failing to meet the requisite standard.

**B.** **The Court Correctly Determined that the Information Sought by the Subpoena is Not Relevant to the Matter Under Investigation and Properly Denied Enforcement of the Subpoena.**

Even if the Court were to find some basis to reconsider the EEOC's relevancy argument, the Court correctly concluded that the Subpoena is unenforceable. The Subpoena seeks far-reaching information about every Nestlé employee at the Company's Mt. Sterling facility who was referred for any type of "physical or medical examination" from January 2010 to the present, information about each employee's application date, hire date, termination date, and reasons for

3

non-selection or termination.[3] Nothing in Mr. Peel's Charge of Discrimination makes this information relevant. Mr. Peel's Charge is limited to events that occurred during a one-month period in June 2010 and involves his referral for a fitness for duty examination and subsequent termination for taking excessive breaks. It is undisputed that Mr. Peel did not assert a substantive GINA violation in his Charge, and it is further undisputed that Nestlé never requested or received <u>any</u> genetic information about Mr. Peel. While the EEOC again states in a conclusory fashion that information it could potentially receive in response to the Subpoena "might cast light" on Mr. Peel's allegation that Nestlé's treatment of him violated GINA (Memo at 8-9), the EEOC has made clear multiple times in briefing and during oral argument that this is not the purpose of the Subpoena. Rather, the EEOC has candidly explained that it already has found a single GINA violation because of the fitness for duty examination of Mr. Peel conducted by Dr. McLaughlin and that the **only** purpose of the Subpoena is to find other "class members":

> The Court: And how would – how would looking for other instances involving this doctor or other doctors at this facility, how would discovering more about those things be relevant to Mr. Peel's charge?
>
> Counsel for EEOC: **Mr. Peel's charge, we feel that there is a violation of the statute in regards to him. And then flowing from there, looking for other class members** . . . .
>
> The Court: Okay, **so is that really the only theory you are going on, that we have discovered a violation as to Mr. Peel and so we should be entitled to reasonably explore whether there are other victims of the same type of violation at that plant?**
>
> Counsel for EEOC: **Correct** . . . **it certainly is possible that if it was done towards one employee from one physician that it could be done towards other employees as well; so yes, that is why I want to explore that**.

---

[3]The Subpoena requests:
    1.    Documents that show the full name, address and telephone number of each physician to whom Nestlé referred individuals for physical or medical examinations for positions a the Mt. Sterling facility from January 1, 2010 to present.
    2.    Documents that show the full name, date of application, if hired, date of hire, if not hired, reason(s) why, and if terminated, reason(s) for termination for each individual who submitted to a physical or medical examination at Nestlé's request for positions at the Mt. Sterling facility from January 1, 2010 to the present.

(Tr. at 7-8 (emphasis added).) The EEOC has also repeatedly stated in this proceeding that it had no evidence whatsoever of a class-wide issue at Nestlé prior to issuing this Subpoena:

> The Court: Is the EEOC always entitled—if it finds one instance of discrimination, is it your view that the EEOC is always entitled to broader probing to see if there are other similarly situated victims of the same type of conduct?
>
> Counsel for EEOC: It's not something that we do in every investigation by any means, but it's certainly something that we are able to do if we feel there is a systemic problem, if there is a practice, a policy in place in particular where these things are happening on a wide scale at a particular facility . . .
>
> The Court: **And what would suggest that there is a systemic issue at Nestlé?**
>
> Counsel for EEOC: **At this point we don't know. We won't know that until we have the information, and then we can determine whether or not that's the case.**

(Tr. at 8 (emphasis added).) In its Reply Brief, the EEOC again stated that it was seeking to expand the investigation on this basis alone: "Nestle's failure to ensure that genetic information is not collected . . . has resulted in at least one instance of a physician acting on its behalf impermissibly . . . . If additional acquisition violations occurred, it is further reasonable to investigate whether they resulted in any use violations." (Reply Br. at 12 (Dockt. # 13).)

The Court properly held that it was "not persuaded that [the EEOC] has free reign to conduct a broad, company-wide investigation based upon a single allegation of an isolated act of discrimination." (Opinion at 5.) Notably, the EEOC has not pointed to any authority that demonstrates that the Court's conclusion is legally unsound. Despite ample opportunity to submit such authority, the EEOC has not cited one case that permitted a systemic investigation based on nothing more than the EEOC's conclusion that a single act of discrimination occurred. In fact, consistent with the Court's determination, multiple courts have refused to enforce subpoenas that attempt to explore class-wide issues where there is no evidence of a systemic

5

issue. The recent holding in *EEOC v. Burlington Northern Santa Fe Railroad*, 669 F.3d 1154 (10th Cir. 2012), which was relied on by the Court (Dkt. 19 at 7) is particularly instructive. In that case, the EEOC received and investigated two charges of disability discrimination, both of which alleged a failure to hire in violation of the ADA following the same medical screening procedure used by the employer. *Id.* at 1155. In investigating those two charges, the EEOC informed the employer that it was broadening its investigation to include "pattern and practice discrimination" and then issued a subpoena for company-wide information. *Id.* at 1156. The district court denied the EEOC's application to enforce the subpoena, concluding that "wide deference to the scope of [EEOC] subpoenas . . . does not transcend the gap between the pattern and practice investigation and the private claims that have been shown here." *Id.* at 1158. The Tenth Circuit agreed and affirmed. *Id.* at 1155. The Tenth Circuit explained that the "EEOC is entitled only to evidence that is 'relevant to the charge[s] under investigation.'" *Id.* at 1157. According to the court, two individual charges alleging the same type of discrimination did not justify the pattern and practice investigation of the EEOC:

> Any act of discrimination *could* be part of a pattern or practice of discrimination, but not every charge of discrimination warrants a pattern or practice investigation. As the Supreme Court explained in *Shell Oil Co.*, we should not construe relevance so broadly as to render its requirement a nullity.

*Id.* at 1157-58 (emphasis in original).

Also instructive is the recent holding in *EEOC v. Loyola Univ. Med. Ctr.*, 2011 U.S. Dist. LEXIS 118286 (N.D. Ill. Oct. 13, 2011). In *Loyola*, the EEOC received and investigated a charge alleging that an individual was subjected to a medical examination in violation of the ADA. *Id.* at *8-*9. During its investigation, the EEOC subpoenaed information pertaining to other individuals required by the respondent to submit to a "fitness for duty exam" from January

6

2008 to the present. *Id.* at *3-*4. The court denied the EEOC's application to enforce the subpoena, explaining that the information sought was not relevant to the underlying charge and was "not sufficiently tailored to the particular circumstances of the investigation." *Id.* at *9.

Likewise, in the *United Air Lines* case, the Seventh Circuit found that the EEOC's subpoena was not relevant because it was not limited to individuals who were similarly situated, *i.e.*, in the same position as Mr. Peel. 287 F.3d at 654. As in the *United Air Lines* case – where the EEOC sought to obtain information of each United employee "who has taken a medical leave of absence," – the EEOC is attempting to investigatively troll through Nestlé's hiring and termination decisions with respect to its entire workforce at the Mt. Sterling facility. *See id.* The Subpoena thus violates the *United Air Lines* ruling because "nothing in the charge suggests systemic discrimination." *Id.* at 655; *see also EEOC v. Packard Elec. Div., GMC*, 569 F.2d 315, 317 (5th Cir. 1978) (affirming district court's decision to deny enforcement of an EEOC subpoena seeking facility-wide information when the pending charges consisted of individual instances of race and gender discrimination); *EEOC v. Randstad*, 765 F. Supp. 2d 734, 741-42 (D. Md. 2011) (holding that information for all employee placements over five-year period was not relevant to the individual charge of discrimination being investigated).

The cases relied on by the EEOC are readily distinguishable, and this Court properly distinguished *Ford Motor Credit* and *Blue Bell Boots* in its Order. (*See* Dkt. 19 at 6.) While the Court did not directly address *Konica* in its Order, it is easily distinguished as well. In *Konica*, the EEOC was investigating the charge of a Konica employee alleging race discrimination in the terms and conditions of his employment. 639 F.3d at 367. During its investigation, the EEOC discovered that Konica employed only six blacks out of 120 total employees at the identified facilities, only one person of color out of approximately 100 employees at other locations, and

that there was segregation among sales teams along racial lines. *Id.* at 367-68. These facts led the EEOC to suspect that Konica might have engaged in discriminatory hiring practices, and the EEOC then issued a subpoena seeking information related to Konica's hiring practices. *Id.* at 368. Given these facts, learned by the EEOC during the course of its investigation prior to the issuance of the subpoena, the court determined that the subpoena was enforceable. *Id.* at 369. The court also determined that the subpoena was relevant and would cast light on the charge at issue because "*[r]acial discrimination is by definition class discrimination*, and information concerning whether an employer discriminated against other members of the same class for the purposes of hiring or job classification may cast light on whether an individual person suffered discrimination." *Id.* (internal quotations omitted) (emphasis added).

The instant case bears no resemblance to any of the cases repeatedly relied on by the EEOC. Unlike those cases, it cannot reasonably be argued here that the information sought in the Subpoena arises from Mr. Peel's charge or will shed light on Mr. Peel's charge. First, in the cases relied on by the EEOC, there was evidence of a systemic issue, in the form of multiple charges, allegations of systemic discrimination, policies relied upon, and/or other information uncovered prior to issuance of the subpoenas indicating systemic discrimination. Second, the subpoenas were in cases involving race and sex discrimination and were arguably relevant to motive. *See Konica*, 639 F.3d at 369 (explaining that race discrimination "is by definition class discrimination"); *Blue Bell Boots*, 418 F.2d at 358 ("Discrimination on the basis of race is by definition class discrimination, and the existence of patterns of racial discrimination in job classifications or hiring situations other than those of the complainants may well justify an inference that the practices complained of here were motivated by racial factors.") (internal citations omitted); *EEOC v. Cambridge Tile Manufacturing Co.*, 590 F.2d 205, 206 (6th Cir.

8

1979) (citing *Blue Bell Boots* and holding that these "same considerations apply to charges of sex discrimination"). Here, in stark contrast to the cases relied on by the EEOC, Mr. Peel's charge fails to articulate a substantive GINA violation, let alone an allegation of systemic GINA discrimination. Moreover, the EEOC has declared that it has already determined that Nestlé violated GINA with respect to Mr. Peel, the motive of Nestlé is not at issue given the nature of the GINA violation alleged, and, by the EEOC's own admission, the Subpoena is aimed only at uncovering other "class members." (Tr. at 7-8.)

In its Memorandum Opinion and Order, the Court correctly noted that the Supreme Court has cautioned courts not to allow the relevance rule to be construed so loosely as to allow the rule to become a "nullity." (Dkt. 19 at 5.) To allow the EEOC to conduct a systemic investigation based on its conclusion that a single GINA violation occurred (using a hypothetical agency theory that finds no support in the law and raises grave due process and estoppel concerns) would fundamentally alter the relevancy standard and would allow the EEOC to conduct systemic investigations in every charge where the EEOC concludes that a violation occurred. This result is not consistent with the statutory and regulatory constraints on the EEOC's investigative authority and was properly rejected by this Court based on its careful consideration of both the record evidence and the legal framework. Accordingly, the Court should deny the EEOC's request for reconsideration.

Finally, the EEOC argues that this Court failed to properly consider Dr. McLaughlin's Declaration in determining that the information sought in Subpoena IN-11-51S is irrelevant to the charge being investigated. However, there is no factual basis for such an argument. First, the Court noted in its Memorandum Opinion and Order that it considered the parties' briefs, the *amici curiae* brief, and the parties' arguments. (Op. at 1.) Dr. McLaughlin's Declaration was

cited by Nestlé throughout its Sur-Reply Brief and Objections to the Report and Recommendation. Furthermore, nothing in the Declaration suggests a pattern or practice of GINA discrimination by Nestlé. To the contrary, Dr. McLaughlin stated under oath that he viewed Mr. Peel as his patient upon seeing him in connection with the fitness for duty examination, (McLaughlin Decl. at ¶ 8), that the intake form that he used with Mr. Peel is an AMA-approved form, (McLaughlin Decl. at ¶ 9), he considers the information he requested necessary to his practice of medicine, (McLaughlin Decl. at ¶ 9), that he is not in any contractual relationship with Nestlé, (McLaughlin Decl. at ¶ 4), Nestlé does not control his practice of medicine in any respect, (McLaughlin Decl. at ¶ 7), that the EEOC misrepresented certain facts regarding his practice in its submissions to the Court after speaking to his wife (McLaughlin Decl. at ¶ 6), and that Nestlé did not ask him to request genetic information regarding Mr. Peel and was not provided genetic information regarding Mr. Peel, (McLaughlin Decl. at ¶ 10). Nothing about Dr. McLaughlin's Declaration supports the EEOC's attempt to the broaden its investigation regarding Mr. Peel's Charge. The only employee that Dr. McLaughlin mentions that Nestlé referred to him is Mr. Peel, less than 2 years prior to the date of the Declaration. The EEOC strains its interpretation of this to speculate that Dr. McLaughlin has referred "other" employees and obtained genetic information from "other" employee, but there is absolutely no reference to any other Nestlé employee in the Declaration.[4]  Nor is there any other basis to suggest that the Court overlooked or misconstrued this or any other evidence so as to cause a clear error of law or manifest injustice.

---

[4] Moreover, Dr. McLaughlin's declaration was drafted over six months after the Subpoena was issued. The EEOC's reliance on a document not yet in existence to justify the issuance of the Subpoena is disingenuous.

### III.  CONCLUSION

For the reasons set forth above, Nestlé respectfully submits that the Court should deny the EEOC's Motion for Reconsideration.

Respectfully submitted this 11th day of June, 2012.

                                           s/Stephanie E. Lewis
                                         Stephanie E. Lewis (Pro Hac Vice)
                                         lewiss@jacksonlewis.com
                                         Andreas N. Satterfield, Jr. (Pro Hac Vice)
                                         satterfielda@jacksonlewis.com

                                         JACKSON LEWIS LLP
                                         One Liberty Square
                                         55 Beattie Place, Suite 800
                                         Greenville, SC  29601

                                         ATTORNEYS FOR RESPONDENT

**CERTIFICATE OF SERVICE**

The undersigned certifies that on June 11, 2012, the foregoing Response in Opposition to EEOC's Motion for Reconsideration was filed through the ECF system, which will send a notice of electronic filing to:

> Aimee L. McFerren
> Equal Employment Opportunity Commission
> 600 Dr. Martin Luther King Jr. Place, Suite 268
> Louisville, KY 40202

> s/Stephanie E. Lewis
> Stephanie E. Lewis (Pro Hac Vice)
> lewiss@jacksonlewis.com
> Andreas N. Satterfield, Jr. (Pro Hac Vice)
> satterfielda@jacksonlewis.com
>
> JACKSON LEWIS LLP
> One Liberty Square
> 55 Beattie Place, Suite 800
> Greenville, SC  29601

4841-7091-3807, v. 1